EFFIE BROWN, Respondent, *v.* EDWARD CROSSMAN et al., Appellants, Impleaded with Others.

Partition — evidence — erroneous rulings — testimony prohibited by section 829 of Code of Civil Procedure.

1. On the trial of an action for partition one of the issues litigated was whether a certain contract, as to the lands involved, made by the predecessors in interest of some of the parties, had been abandoned, or whether it remained in full force. The parties claiming that the terms of the contract had been complied with and that it was still in force sought to show that it had been substantially paid up. This evidence was excluded. *Held*, error.

2. The parties claiming that the contract was not in force were allowed to give evidence tending to show its surrender, which was of the same general character as that previously excluded when offered to show it was in effect. This evidence was given by a party to the action, interested in the event, and related to a conversation, which she heard, between the deceased father of parties opposed to her in interest and predecessors in the title under which she claimed. *Held*, that the witness was prohibited from giving such testimony by section 829 of the Code of Civil Procedure, even though she did not take part in the conversation.

*Brown* v. *Crossman*, 142 App. Div. 919, reversed.

(Argued October 25, 1912; decided November 19, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 23, 1911, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John P. Kellas* for appellants. The complaint as well as the proof was fatally defective in not showing possession in the plaintiff nor the right to possession at the time

of the commencement of the action. (*Weston* v. *Stoddard*, 137 N. Y. 119; *Romey* v. *Sickles*, 108 N. Y. 650; *Day* v. *Neulotz*, 107 N. Y. 148; *Wood M. & R. Co.* v. *Thyer*, 50 Hun, 520; *Brandt* v. *Krank*, 164 N. Y. 519; *Brighton* v. *Clafflin Co.*, 180 N. Y. 81; *Lambier* v. *Tailer*, 21 N. Y. S. R. 380; 125 N. Y. 725; *Laughran* v. *Smith*, 75 N. Y. 205; *Harding* v. *Craft*, 21 App. Div. 139; *Matter of Hostley*, 56 Hun, 240.) The plaintiff is but a mortgagee and hence cannot maintain partition. (*Carr* v. *Carr*, 52 N. Y. 251; *Horn* v. *Keteltas*, 46 N. Y. 605; *Babcock* v. *Stewart*, 36 N. Y. S. R. 1007; *Sloan* v. *Baird*, 162 N. Y. 332; *Moore* v. *Berrows*, 34 Barb. 173; *Adams* v. *Green*, 34 Barb. 176; *Pelton* v. *Westchester Fire Ins. Co.*, 77 N. Y. 605; *Hathaway* v. *Payne*, 34 N. Y. 103; *Dobb* v. *Neilson*, 90 N. Y. 243.) The court erred in not receiving evidence of payments on the indebtedness offered by the defendants. (*Odell* v. *Montrose*, 68 N. Y. 499; *Mooney* v. *Byrne*, 163 N. Y. 91; *Russell* v. *Briggs*, 165 N. Y. 505; *Bremer* v. *M. Ry. Co.*, 191 N. Y. 339; *Conover* v. *Palmer*, 123 App. Div. 818; *McKane* v. *Howard*, 202 N. Y. 183; *Caccia* v. *Isecke*, 123 App. Div. 779; *Voilkommer* v. *Cody*, 85 App. Div. 57; *Schutzars* v. *Union R. R. Co.*, 181 N. Y. 36; *Corrigan* v. *Funk*, 109 App. Div. 848.) The court erred in receiving the evidence of witnesses E. K. Kibbe and Allie Feek of conversations between C. L. Kibbe and John Crossman in February, 1892. (*Gandolfo* v. *Appelton*, 40 N. Y. 533; *Flannery* v. *Van Tassel*, 127 N. Y. 633; *Brinkerhoff* v. *Sartwell*, 85 Hun, 557; *Shannon* v. *Pickrell*, 2 N. Y. S. R. 160; *McIntyre* v. *Costella*, 6 N. Y. Supp. 307; *Hutchins* v. *Hutchins*, 98 N. Y. 64; *McIntyre* v. *Costella*, 24 N. Y. S. R. 765; *Englander* v. *Fleck*, 51 Misc. Rep. 567; *Heavens* v. *Gilmore*, 83 App. Div. 84; *Davis* v. *Gallagher*, 52 Hun, 593.) The court erred in receiving the evidence of plaintiff relative to having seen the contracts in her father's possession from 1892 hence, and seeing the contracts and hearing a conversation between her father

and Seth Y. on an occasion when she was present. (*Caccia v. Isecke,* 123 App. Div. 779; *Matter of Woodward,* 69 App. Div. 295; *Loveridge* v. *Hill,* 96 N. Y. 222; *Mills* v. *Kernochan,* 3 N. Y. S. R. 152; *Miller* v. *Montgomery,* 78 N. Y. 282; *Provost* v. *New York,* 15 Daly, 87; *Matter of Knibbs,* 108 App. Div. 134; *Clift* v. *Moses,* 112 N. Y. 426; *Hoag* v. *Wright,* 170 N. Y. 39; *Matter of Humfreville,* 6 App. Div. 535; *Jones* v. *Reilly,* 170 N. Y. 97.)

*Frederick G. Paddock* and *A. W. Sheals,* for respondent.

CHASE, J. In and prior to 1869 Seth Y. Crossman was the owner in fee of a farm in Franklin county. On November 11, 1869, he gave a mortgage to Alpheus Conger for $4,573.27.

About nine years after giving the mortgage and on November 6, 1878, he gave a deed of the farm to Conger, the consideration recited therein being $5,916.40, and the mortgage was satisfied. All of the parties to said mortgage and deed are dead, and there is no evidence of the circumstances attending the delivery of the deed to Conger. The deed was duly recorded, but Crossman remained in possession of the farm.

About five years after such deed to Conger and on March 7, 1883, he (Conger) conveyed the farm to the executors of the estate of Linus Kibbe, deceased, and they gave to Crossman a contract which was executed in duplicate, by which they agreed to convey the farm to him on payment of $4,150. as therein provided. Crossman remained on the farm until 1890.

In April, 1890, he moved to Malone, and at the same time his son John, who had married in 1889, and then lived with his father on the farm, moved away and became a tenant on another farm. Seth Y. Crossman and the executors of said estate joined in leasing the

personal property then on the farm and the farm to one Sweet for one year. On February 16, 1391, a similar lease was given to one Kelley for one year.

In 1902 John returned to the farm and on February 17, 1902, took a lease from "C. L. Kibbe of South Bombay, N. Y., as executor of the estate of Linus Kibbe, deceased, and E. K. Kibbe of the same place aforesaid (joint owners)" of the farm and personal property. Seth Y. Crossman is in no way a party to the lease, and it does not in any way appear from the lease that he was at that time interested either in the farm or the personal property thereon. The lease provided for the payment of a rental of $350. a year, and it provided in great detail for the preservation of the property, real and personal. It also provided that the parties of the first part could sell the farm at any time, and in that case John Crossman was to give up possession at the end of the year following such sale. Seth Y. Crossman never returned to the possession of the farm after he left it in 1890, and he died in November, 1902. John remained upon the farm paying rent as lessee under the Kibbes until December 1, 1907, when he moved away from the farm, and at the same time his sister, the defendant Hutchins, claiming an interest in the farm under her father as an heir at law, moved upon the farm.

On February 24, 1908, John conveyed any interest he had in the farm as an heir at law of his father, to his sister, the defendant Hutchins. She continued to occupy the farm until April 15, 1908, when she and her brother Edward, also claiming as an heir at law of his father, leased the farm to Anna Crossman, the wife of John, and Anna with her husband returned to the farm and have lived thereon since that time.

The Kibbe title at the time of the commencement of this action was in the plaintiff and the defendants Feek and Dimmick.

This action is brought to partition and sell the farm.

The heirs of Seth Y. Crossman are made defendants, and it is alleged that they claim some interest in the farm which interest or claim is unknown to the plaintiff.

The claim of the plaintiff and her two sisters is that the title to the farm is vested absolutely in them, as appears from the record, and that John Crossman's possession of the farm is as tenant under and in subordination to them.

The claim of the defendants Crossman and Hutchins is that the title to the farm has been held since 1878 as security for a loan, and that the persons named in the conveyances as grantees are really mortgagees, and that Seth Y. Crossman died the owner of the equity of redemption in said farm. It is also claimed by them that the plaintiff and the defendants Feek and Dimmick and their grantors have received payments of various sums on the loan from time to time until, at the commencement of the action, the loan had been fully or substantially paid. The appellants asked that they be decreed to be the owners of the real property described in the complaint.

The findings are in favor of the plaintiff and of the title as shown by the record. They are sufficient to sustain the judgment and were unanimously affirmed by the Appellate Division.

The appellants contend that the complaint is defective and that the evidence taken upon the trial is insufficient upon which to base the judgment because of failure to allege and show possession of the real property or right to the possession thereof in the plaintiff at the time of the commencement of the action. What is meant by possession in section 1532 of the Code of Civil Procedure is not " a strict *pedis possessio,* but a present right to the possession, as distinguished from the cases in the next section, where, under certain circumstances, the remainderman may bring the action. The section must be read as a part of the article to which it pertains, and cannot be

construed so literally as to render nugatory the plain purpose of the provisions with which it is associated." (*Weston* v. *Stoddard*, 137 N. Y. 119, 128.)

It is alleged in the complaint that the plaintiff and the defendants Feek and Dimmick are seized in fee simple and entitled to the possession of the property in controversy. The court found:

"*Second.* That the plaintiff Effie Brown and the defendants Allie K. Feek and Jennie Dimmick are the owners in fee absolute of the real estate mentioned and described in the complaint, and each owns an undivided one-third interest therein."

"*Fourth.* That the contract mentioned and described in the answer between the estate of Linus Kibbe and E. K. Kibbe and Seth Y. Crossman for the sale of the real estate mentioned in the complaint, dated March 7th, 1883, was surrendered by Seth Y. Crossman during his lifetime."

"*Fifth.* That the defendant John Crossman entered upon the real estate mentioned in the complaint under a written lease March 1st, 1892, and paid rent therefor to the lessors and their successor E. K. Kibbe down to 1907, and is now living on said farm with his wife the defendant Anna Crossman, and said lease was never surrendered, and no rent paid after March 1st, 1907."

The respondent's contention is summarized in the findings, and it is that the possession of John is and always has been under her and her sisters and their grantors, and that the attempt on his part to give up possession under the Kibbes and to have the heirs at law of Seth Y. Crossman acquire possession was a mere subterfuge and pretense.

A partial history of the transactions in controversy shows that a letter was written by C. L. Kibbe to Seth Y. Crossman in 1878 in response to a request from Crossman to have Kibbe purchase the farm and give him a contract for the purchase of it. The letter is as follows:

1912.]                Opinion, per CHASE, J. ·           [206 N. Y.]

" SETH CROSSMAN, Esq.:

" DEAR SIR.— Furnish us with an abstract of title of your old place of 240 acres, which old Mr. Alpheus Conger holds a deed of running back 25 or 30 years, and give us the length of time you want a contract and the amount you want to have in order to pay Conger and I will let you know within two weeks from date.

" (Signed)   Yours, &c.,

" C. L. KIBBE.

" For L. KIBBE."

John Crossman, who in 1883 was about seventeen years of age, testified at the trial that Kibbe came to see his father in February or March, 1883, and that he overheard a conversation in the kitchen of the house, in which Kibbe said to his father that "he would let him have $4,000 to pay off Conger; that he would have to have $100 for doing the work." He further testified that Kibbe told his father that "he would give him a contract and that he would take a deed from Conger."

The letter and conversation do not establish as matter of law that Conger was not the owner of the farm nor that it was not the intention of Kibbe and Crossman that the title of the farm should be taken not only in form but in fact by the estate of Kibbe, deceased, and that Crossman was to accept the contract and hold it as his sole interest in the farm.

The question as to whether Conger and his grantees held the property merely as security for a loan was a question of fact to be determined in the action. Assuming, as was determined by the judgment, that the plaintiff and the defendants Feek and Dimmick and their grantors were the owners of the real property in fee, there was also a question of fact to be determined in the action whether the contract held by Seth Y. Crossman was abandoned or remained in full force at the time of his death. The contract was originally delivered in duplicate; Kibbe retained one and Crossman one. Several

years before he (Crossman) died the executors of Kibbe had the possession of both copies and they were both produced by the plaintiff at the trial.

It is difficult to conceive why Seth Y. Crossman should have failed to assert his right to the farm for twelve years after he left it, during the last ten years of which his son was the tenant under the Kibbes as owners, if it is true that he was during all that time the equitable owner thereof and if the amount of the loan as alleged or the consideration named in the contract was substantially paid. The claim now made by the appellants was not asserted for at least five years after Seth Y. Crossman's death, during which time John, one of the heirs at law under whom in part the appellants now claim, continued a tenant under the respondent's grantors, paying rent to them and so recognizing them as owners.

We are unable, however, to sustain the judgment because of serious errors relating to the admission of evidence during the trial. The appellants sought to show that the purchase money named in the contract had been paid in different amounts from year to year down to the time of the commencement of the action, and that at such time the agreed purchase money had been substantially paid up. When this evidence was offered the court stated in substance that it would be wise first to wait and see whether the contract was in force. Notwithstanding the suggestion of the court the appellants offered the evidence, but the court declined to hear it until the question of the validity and continuance of the contract had been passed upon. The defendants Hutchins and Crossman excepted.

The evidence was material upon the question of the continued existence of the contract, and moreover evidence relating to the amount due on the contract was thereafter brought to the attention of the court by the respondent. The defendant Dimmick, being examined as a witness, testified to an occasion in 1890 when Seth

Y. Crossman, one Harris as guardian for a person interested in the Kibbe estate, her father and mother (Mr. and Mrs. Kibbe), her sister Effie and herself were present. Her subsequent examination for the respondent, so far as material at this time, is as follows:

" Q. What, if anything, did you see done by Mr. Harris, Mr. Crossman and your father in regard to these contracts at that time ? [Objected to by said defendants as incompetent, immaterial and the witness is incompetent to testify concerning a personal transaction between herself and the deceased. Objection overruled.] A. I saw the contracts there. Seth Crossman had one and father had the other. * * * I did not talk to my father at that time or to Mr. Crossman. * * *

" The Court: I think I will take it, but it is doubtful testimony; there is no question about it. I will take it for the present. [Said defendants except.] * * * A. * * * Seth Crossman was there and he told father he had come over to see how he stood on the contracts, and Frank Harris said he came to find out how much was due so he could know what belonged to the heir that he was guardian for. * * * Father asked Seth Crossman if he brought his contract and he said he had, and Frank Harris sat up to the desk with father and figured. Seth Crossman before this handed his contract to father, because the one he had had the payments on it. And Frank Harris and father figured up to find how much was due on the contract, and as near as I can remember it it was about $5,000. I could not remember now whether it was something over or something less but it was something about that. * * * Frank Harris said that and they compared notes to see how they figured and that is what they said. Father asked Seth Crossman if he had given him credit for all that he had paid on the contract and he said he had."

The evidence so offered and received against the appellants' objections and exception was so received upon the

question of the surrender of the contract, and the ruling was in direct conflict. with the ruling as made when evidence of the same general character was offered by the appellants. The evidence had a bearing upon the question whether the contract had been surrendered and abandoned, and there is reason to believe that it was given great weight in the determination of the issues. It was error to refuse to allow the appellants to give evidence relating to the amount due on such contract and to allow such evidence by the respondent.

The evidence so received from the witness Dimmick, relating to the possession of the duplicate contracts and the alleged agreed amount unpaid thereon, was also received contrary to the provisions of section 829 of the Code of Civil Procedure. Mrs. Dimmick was a party to the action, interested in the event, and gave testimony in her own behalf and interest concerning a personal transaction or communication between herself and others, including Seth Y. Crossman, who at the time of the trial was a deceased person and the one through whom the appellants derived their alleged title and interest. The fact that the witness although present did not take part in the conversation does not prevent the Code prohibition. (*Griswold* v. *Hart*, 205 N. Y. 384.)

There are many other questions presented by this appeal, but they may not arise upon a new trial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and COLLIN, JJ., concur.

Judgment reversed, etc.