CHARLES GARLAND, Respondent, v. SOL RAUNHEIM, Individually and as Successor Trustee under the Last Will of NATHAN ROGGEN, Deceased, Appellant, and TOBY ROGGEN, Also Known as TOBBIE ROGGEN, Individually and as Administratrix C. T. A. of the Estate of HARRY ROGGEN, Deceased, et al., Respondents, et al., Defendants.

First Department, March 21, 1968.

*Alvin H. Meadow* of counsel (*Edward S. Minzner* with him on the brief; *Juron & Minzner,* attorneys), for Sol Raunheim, appellant.

*Kenneth M. Stark* of counsel (*Bendes, Stark & Amron,* attorneys), for Charles Garland, respondent.

STEVENS, J. P.  In this action for partition defendant Raunheim as successor trustee of certain trusts appeals from an order entered June 9, 1967 appointing a Referee to ascertain the rights, shares and interests of certain parties in the property to be partitioned, and to determine if a sale should be had. Raunheim also appeals from an order entered October 18, 1967 which granted his motion for reargument and renewal of the motion which resulted in the earlier order of June 9, 1967. Special Term denied Raunheim's motion to dismiss the complaint but held further proceedings in abeyance pending the sale of the property pursuant to order of the Surrogate's Court. Special Term provided, however, that after such sale the plaintiff's action would attach to the proceeds.

One Nathan Roggen died October 14, 1925 leaving a will which was admitted to probate November 5, 1925. Paragraph Sixth of that will reads in pertinent part as follows:

"I give, devise and bequeath unto my executors the entire capital stock of the Roggen Realty Co., Inc., I having acquired and own the entire capital stock of the Company, to have and to hold such stock for the following uses and purposes: to elect or cause to be elected directors and officers of the Roggen Realty Co., Inc. who shall transfer and convey to my executors the following three (3) parcels of real property in the Borough of Manhattan, City, County and State of New York, viz:

"Parcel 1—Nos. 39-41 East Broadway * * * and I direct my executors * * *

" (c) to hold, and I hereby give, devise and bequeath unto my executors, said premises #39-41 East Broadway, to have and to hold the same in trust for the following uses and purposes: to pay out of the net income thereof, to my wife, Brahne, during her life-time, the sum of Twenty ($20.) Dollars per week, payable monthly, and to pay to my sons Sol and Julius and to my Daughter Sarah Raunheim, all the rest and remainder of the net income thereof, that is, one-third of such rest and remainder to each of them; and upon the decease of either of my said sons Sol or Julius, or of my daughter Sarah Raunheim, or of any of them, I direct my executors to convey, and I hereby give, devise and bequeath one undivided third part and share of the said premises #39-41 East Broadway, to the lawful issue of such deceased son or daughter, per stirpes and not per capita, subject to the payment of $20.00 per week to my wife Brahne during her life-time."

In another paragraph of the will it was provided that the residuary estate of the testator should go to his seven children or their survivors.

Sol Roggen died September 9, 1961, leaving two daughters, Joan and Natalie, as his lawful issue. Plaintiff acquired the interest of Joan Roggen on December 28, 1965, and the interest of her sister, Natalie Rapp, on December 31, 1965. The widow of the testator died prior to April 19, 1943, and all of the measuring lives, that is Sol, Sarah and Julius, terminated on September 9, 1961, upon the death of Sol Roggen. Sarah died January 15, 1956, leaving surviving her husband, Sol Raunheim, now the successor trustee, and two daughters, Stella and Hattie, who subsequently assigned their interests to Sol Raunheim. Julius died without issue and his interest passed under paragraph Seventh of the will to the testator's children.

On September 20, 1962 Sol Raunheim was appointed successor trustee of the trusts provided for under subdivision (c) of paragraph Sixth of the testator's will. The predecessor trustee to Sol Raunheim, Harry Roggen, died August 29, 1944 while all of the beneficiaries of the trust were alive. In 1962, when all of such beneficiaries were dead Sol Raunheim applied for appointment as successor trustee and, as indicated, the application was granted. Plaintiff-respondent commenced this action for partition and sale in July, 1966. In his complaint plaintiff alleges that he is the owner of one-third undivided interest in the property at 39–41 East Broadway by purchase from the lawful heirs of Sol Roggen. Defendant Raunheim affirmatively alleged in his answer that partition and sale is unnecessary and inequitable, that a voluntary sale is imminent, and defendant contended that the plaintiff had only a possible equitable interest and lacked standing to maintain the action. After joinder of issue plaintiff moved for summary judgment. In the first order appealed from Special Term granted the motion to the extent of appointing a referee " to ascertain the rights, shares and interests of the several parties having an interest in the property sought to be partitioned, and an abstract of the conveyances or other instruments by which the same are held ". Special Term found that plaintiff was clearly a tenant in common and as such had an absolute right to partition. Thereafter the successor trustee moved for renewal and reargument, attaching to his papers a contract of sale dated March 23, 1967 between the successor trustee as seller and two other parties as purchasers. He raised the sole issue as to whether the court as a matter of law was correct in holding that the plaintiff was a tenant in common possessing the necessary legal title to support an action for partition. In his affidavit in support of the motion Raunheim pointed out that he as successor trustee had petitioned the Surrogate's Court for an order authorizing the sale of the sub-

ject real property and that the citations which issued were returnable June 30, 1967. The matter was pending before the Surrogate's Court. Special Term modified the prior order as heretofore indicated.

Surrogate Di Falco, by order dated July 28, 1967, directed that the property be sold in accordance with the terms of the contract earlier referred to. The Surrogate reserved the fixation and determination of the rights and interests of the respective parties until the judicial settlement of the account of the petitioner Raunheim, which account was to be made in 60 days of the date the sale was consummated. The Surrogate ruled that the pendency of the partition action affecting such property would not constitute a bar to the conveyance of the real property by the successor trustee. The property has now been sold and the proceeds are to be deposited in the Surrogate's Court, if they have not already been so deposited.

Appellant Raunheim urges that the plaintiff does not have standing to maintain an action for partition pursuant to article 9 of the Real Property Actions and Proceedings Law. He argues that what the testator really devised was the stock of the corporation, therefore the trusts were personalty and plaintiff can acquire no more than an equitable title or interest, and plaintiff, therefore, had no legal interest and no status to maintain an action for partition. It should be noted, however, that the testator directed his executors first to transfer the realty out of the corporation so that the trustees were directed to hold as an asset, realty. Only in the barest and most unreasoning technical sense can it be urged that the executors held personalty by reason of the momentary possession of stock. The executors had the power, the duty and were subject to the direction to immediately take title to the realty. It was the obvious and clear intent of the testator that they take and hold the realty for the stated purposes. The executors, therefore, held the realty in trust for a designated purpose with remainder over upon the terminaion of the life tenancies.

" A future estate is created when the disposition creating it becomes legally effective " (EPTL 6–3.4). Since the estate here was created by will it became effective when the testator died. While there was a deferred right of enjoyment, title was created by the instrument (see *Corley* v. *McElmeel*, 149 N. Y. 228). Section 6–4.2 defines a future estate as " an estate limited to commence in possession at a future time, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate created at the

same time." By the language of the will as it appears in subdivision (c) of paragraph Sixth of the document a future estate was created. A remainder is defined in EPTL 6–4.3 as a future estate created, as defined in section 6–4.2, in favor of a person other than the testator. Applying that definition to the estates as created we conclude that the testator created a future estate which was a remainder. EPTL 7–2.2 provides " when the purpose for which an express trust is created ceases, the estate of the trustee also ceases." The purpose of the trust was to provide income for designated persons. After the termination of the three measuring lives the purpose was fulfilled. There were no active duties required of the trustee thereafter so that the legal estate of the trustee ended. It ceased by operation of law. A trust terminates when there ceases to be a beneficiary capable of calling for the enforcement of the same (*Levy* v. *Levy,* 33 N. Y. 97; see, also, *Matter of Finck,* 103 Misc. 526). Upon the death of the life beneficiaries the issue of such beneficiaries immediately became vested with their interests. Accordingly, there were no further duties on the part of the trustee to be executed.

When Harry Roggen, the testamentary trustee, died on August 29, 1944, the trust had not terminated because some, if not all, of the measuring lives were still in being and the trust still had an active function to perform. Accordingly, since the trust had not been executed the trust estate vested in the Surrogate's Court (EPTL 7–2.3). When Raunheim was appointed successor trustee all of the life beneficiaries were dead and their issue accordingly had become vested with their interests. There were no duties yet to be performed by a trustee. The estate of the remainderman had, in fact, ripened into possession, actual or constructive (*Matter of Miller,* 257 N. Y. 349; *Matter of Finck, supra*).

EPTL 6–2.2 (subd. [a]) provides " a disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy." There was no such express declaration here of a joint tenancy. Accordingly a tenancy in common was created by virtue of the language of the will.

Under subdivision 1 of section 901 of the Real Property Actions and Proceedings Law " a person holding and in possession of real property as joint tenant or tenant in common, in which he has an estate of inheritance, or for life, or for years, may maintain an action for the partition of the property, and for a sale if it appears that a partition cannot be made without great prejudice to the owners." Under subdivision 2 a person

holding a vested remainder as a tenant in common may maintain an action for the partition of real property to which it attaches according to his respective share. Under the section the party bringing the action must have legal title but it has been held that the possession necessary is not a strict *pedis possessio* but a present right to possession (*Brown* v. *Crossman*, 206 N. Y. 471). Possession in that sense follows the title. In other words, constructive possession such as the law draws to the title is sufficient for the purposes of maintaining an action in partition (see *Deegan* v. *Deegan*, 247 App. Div. 340). It is concluded that the plaintiff held a sufficient legal title and right to possession to sustain an action for partition and such action was properly brought.

No good cause is shown nor does any reason appear why these actions should be in separate courts with the attendant separate expenses which must be borne by the parties. The proceeds are in the Surrogate's Court where the successor trustee has been directed to account. Accordingly it is directed that the proceedings in the Supreme Court and all other actions or subsequent proceedings be transferred to the Surrogate's Court and there be consolidated with the accounting proceeding. Under subdivision a of section 19 of article VI of the Constitution of the State of New York '' the supreme court may transfer any action or proceeding, except over which it shall have exclusive jurisdiction which does not depend upon the monetary amount sought, to any other court having jurisdiction of the subject matter within the judicial department provided that such other court has jurisdiction over the classes of persons named as parties.'' (See, also, *Shearn* v. *Lord*, 16 Misc 2d 224, affd. without opn. 3 A D 2d 823.) This constitutional provision supersedes CPLR 325 (subd. [d]) (1 Weinstein-Korn-Miller, N. Y. Prac., par. 325.20).

The orders appealed from should be affirmed, without costs, with a direction that the actions and all subsequent proceedings be transferred to the Surrogate's Court as heretofore directed and consolidated with the accounting proceeding.

EAGER, CAPOZZOLI, TILZER and RABIN, JJ., concur.

Two orders entered on June 9, 1967 and October 18, 1967 unanimously affirmed without costs or disbursements. The proceedings in the Supreme Court and all other actions or subsequent proceedings are transferred to the Surrogate's Court and there to be consolidated with the accounting proceeding.