PEOPLE ex rel. QUEENS COUNTY WATER CO. v. TRAVIS, State Comptroller.

(Supreme Court, Appellate Division, Third Department. March 8, 1916.)

TAXATION ⟨⟩==383—FRANCHISE TAX—WATER COMPANIES—DIVIDENDS.

    Within Tax Law (Consol. Laws, c. 60) § 186, providing a franchise tax on dividends declared or paid by a corporation formed for supplying water, such a company, selling land, which cost it $200,000, to a corporation formed to take it over, for a note and mortgage for $200,000, and all the new corporation's stock of $700,000, such stock distributed directly by the buyer, at the seller's direction, to the seller's stockholders, pro rata, is presumptively a dividend of profits of the face value of the stock; Stock Corporation Law (Consol. Laws, c. 59) § 55 prohibiting issuance of stock except for actual value, and section 28 prohibiting dividends, except from surplus profits.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 634; Dec. Dig. ⟨⟩==383.]

    Howard and Woodward, JJ., dissenting.

---

Certiorari by the People, on the relation of the Queens County Water Company, to review the action and determination of Eugene M. Travis, as Comptroller of the State, denying the application of relator for a revision and reduction in the amount of a franchise tax imposed on relator pursuant to Tax Law, § 186. Determination affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Hun & Parker, of Albany (Howard Mansfield, of New York City, and Michael D. Reilly, of Albany, of counsel), for relator.

Egburt E. Woodbury, Atty. Gen. (Sanford W. Smith, Deputy Atty. Gen., of counsel), for defendant.

JOHN M. KELLOGG, P. J. The relator owned about 538 acres of land around or adjoining its plant, which it purchased some years ago for the protection of its water supply and drainage area. About 1911 it determined that it was not necessary to retain said lands for that purpose and that the company should dispose of them. The Norumbega Company was formed by the relator's stockholders, and controlled by them, with a capital stock of $700,000, and it purchased the lands, giving therefor its capital stock, assuming mortgages upon the property of $24,000, and giving its note to the relator for $176,000. The apparent purchase price was $900,000. The land cost the relator about $200,000, but was worth more than that sum when sold to the new company. The capital stock of the new company was distributed by it to the stockholders of the relator's company, and represented the amount given for the land, with the mortgages and note. The comptroller has treated this distribution of stock as a $700,000 dividend made by the relator, and this certiorari challenges that determination.

If the company purchased these lands of the relator for $700,000 of its stock, the mortgages, and the note, and turned the stock and note over to the relator, and the relator upon its accounts treated the stock as profits and distributed it pro rata among its stockholders, it could not seriously be questioned but that the relator had thereby paid a dividend. The only question remaining would be: What was the value or amount of the dividend? The courts care but little for form, and are only interested in determining what is the substance and effect of the transaction. Clearly the land was worth more than its cost, and the new company gave for the land more than the cost price. The excess of the selling price over the purchase price represents profits to the company, and is represented by the stock issued by the Norumbega Company. It is immaterial whether the relator entered these profits upon its books and distributed them itself among its stockholders, or caused the purchaser to make the distribution. If the purchaser made the distribution, it could only be done for the purpose of convenience, or perhaps to make a saving in taxation. The result, however, is the same. The stockholders of the relator's company have received a profit from the sale of its lands. It does not make any difference what form a distribution of profits by a corporation takes. Such distribution is to all intents and purposes a divi-

dend. Hartley v. Pioneer Iron Works, 181 N. Y. 73, 73 N. E. 576.

Evidently the Norumbega Company owns no property other than this land, and its capital stock was issued solely for the land. Section 55 of the Stock Corporation Law prohibits stock corporations from issuing stock or bonds, except for money, labor done, or property actually received for the use and lawful purposes of such corporation, and provides that any corporation may purchase property and may issue stock to the amount of the value thereof in payment therefor, and that in the absence of fraud in the transaction the judgment of the directors as to the value of the property purchased shall be conclusive. If the transaction was honest, as we must assume it was, the Norumbega Company issued its stock only for actual value, and therefore the stock was worth par. All reasonable presumptions are in favor of the decision of the comptroller, and we cannot assume, for the purpose of annulling his determination, that the land was put onto the company at an exorbitant price in positive violation of law. We therefore assume that the real estate purchased by the Norumbega Company was worth $900,000. If it was not worth that sum, proof should have been made to the comptroller.

Before the sale the land was the property of the relator. After the sale relator did not decrease the amount of its capital stock, but it caused a distribution of $700,000 to be made to its stockholders. Section 28 of the Stock Corporation Law provides:

"The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law."

A corporation may begin business with a surplus contributed by its stockholders, and may thereafter divide that surplus, and such division is treated as a distribution of original capital or surplus contributed, and not as a dividend. In such a case the stockholders are only withdrawing from the company the moneys which they paid to it for temporary use, over and above the capital stock. But for any other money received or earned by the company it is difficult to see how it can make or cause a distribution of them to be made otherwise than by a dividend from surplus profits. No proceedings were taken for the reduction of the capital stock of the relator, and no such reduction is alleged. The capital remained the same as before. It is not claimed that any sum was ever contributed by the stockholders to the company, except the original capital. Therefore this distribution caused to be made on account of profits which the company had derived from the sale of lands represented profits, and was a dividend. If a water power company, in disregard of the charter and the law, takes a flier in Wall Street and makes a substantial profit, it can only distribute those profits to its stockholders as a dividend. It may attempt to call it something else, but the fact remains it is distributing profits to its stockholders. The profits were not realized in its legitimate business, but it earned the profits for its stockholders and caused them to be distributed.

It is immaterial, therefore, whether the Water Company made these profits by selling water or by selling land. It purchased the land for a proper corporate purpose, in the belief that such purchase was necessary to protect the interests of the company. After it became satisfied by the changed condition that it was unnecessary to hold it longer, it made the sale, reaping a profit therefrom. Such profit, therefore, arose in the legitimate business of the corporation. The Norumbega Company could not determine how these profits were to be distributed, but distributed them by the direction of the relator.

The relator had its capital and surplus invested in its business. It purchased the land apparently upon credit, giving its bonds or obligations therefor. It is immaterial whether it was purchased with profits, with the credit of the company, or otherwise. The fact remains the land was purchased by the company in the regular transaction of its business, and was later sold at a profit. The capital stock has not been decreased, but remains as it was before the sale. The amount received for the lands above the cost, $200,000, was therefore profits, and was distributed by the relator to its stockholders. We are not interested as to what induced the relator to do this business in the manner which it adopted. It controlled the situation, made its plan, and carried it out. The fact, however, remains that the lands were worth more than they cost, that there was a profit in the sale, and that profit has been distributed by the direction of the relator to its stockholders. Aside from the fact that full-paid stock was issued for this land, there is but little to show its actual value, except that it was worth more than it cost. It may be unfortunate for the relator that it did not show the actual value of the land; but perhaps, by issuing full-paid stock for it, the directors who had participated in the transaction were not in a position to contend that the land was worth less than the stock, the note, and the obligations assumed. The determination should therefore be affirmed, with costs.

Determination confirmed, with $50 costs and disbursements.

LYON and COCHRANE, JJ., concur.

HOWARD, J. (dissenting). The relator, the Queens County Water Company, is a corporation which was formed for the purpose of supplying water within the territory known, prior to the Greater New York Charter, as the town of Hempstead. The water company had acquired, and had held for a considerable time prior to 1911, certain lands which it finally determined was not necessary for its use. Believing itself unauthorized to deal in real estate, the relator conceived the idea of selling the land outright to the Norumbega Company, a friendly corporation, the stockholders of which were stockholders of the relator. This it did. In payment for these lands the latter corporation assumed mortgages on the property transferred, aggregating about $24,000, and gave its note to the relator for $176,000. It also issued its capital stock to the amount of $700,000, all of which stock it distributed direct to the stockholders of the relator ratably, according to their holdings. These lands cost the relator about $200,-

000, and the $24,000 in mortgages assumed and the $176,000 note given represent that amount. The comptroller fixed the amount of the relator's franchise tax, under section 186 of the Tax Law, on excess dividends, at $21,945. This was based on a report of the relator concerning the above-described sale of the real estate, and also upon its regular annual report to the effect that its paid-up capital stock for the year ending October 31, 1911, was $1,050,000, and that it had declared dividends to the amount of $73,500, and that the rate per annum of said dividend was 7 per cent.; that is, the comptroller held the $700,000 of Norumbega stock to be dividends paid by the relator to its stockholders within the meaning of section 186 of the Tax Law. Was this stock dividends? That is the question before us.

Section 186 of the Tax Law, so far as relevant here, reads:

"Every corporation, * * * formed for supplying water * * * shall pay to the state for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state, an annual tax which shall be five-tenths of one per centum upon its gross earnings from all sources within this state, and three per centum upon the amount of dividends declared or paid in excess of four per centum upon the actual amount of paid-up capital employed by such corporation, joint-stock company or association."

By this provision of the Tax Law corporations of the character of the relator were required to pay a certain tax for the privilege of exercising corporate franchises or carrying on business. This tax was to be measured each year by the dividends declared in the previous year. The purpose of the law was to tax the corporation according to its prosperity. A corporation earning and paying no dividends in a given year in excess of 4 per centum was required to pay no tax the next year—that is, no tax except the gross earnings tax; whereas, the same corporation earning and paying a dividend above 4 per centum in some subsequent year would be required, the following year, to pay the tax specified.

"Dividends," within the meaning of section 186 of the Tax Law, has a well-defined meaning. Dividends, as here spoken of, cannot be made out of capital; they can only be made out of surplus profits arising from the business of the corporation. Section 28, Stock Corporation Law; People v. Albany Ins. Co., 92 N. Y. 458. Neither the real estate in question nor the stock arising from its sale was made from the surplus profits arising from the business of the relator. The sale of these lands in no manner measured the price which the Water Company was required under section 186 to pay for the privilege of doing business in 1912. The real estate was capital, not dividends; and the stock of the Norumbega Company was only another form of capital. In a certain sense the stock might be said to be a distribution of capital; but in no sense can it be considered dividends arising from surplus profits within the meaning of section 28 of the Stock Corporation Law and section 186 of the Tax Law.

But the comptroller contends that the lands themselves were purchased, partly at least, out of surplus funds, and were therefore, when sold and paid for in stock, in reality dividends. He has undertaken

to establish this by an elaborate display of figures taken from the books of the relator. The president of the relator, a person proven to be entirely familiar with the affairs and books of the corporation, swears positively that all these lands were purchased from capital, and not from surplus funds. In the absence of proof to the contrary by a professional accountant or other expert, we must assume this evidence to be true.

In the comptroller's brief it is asserted that the issuance of the Norumbega stock by the Norumbega Company directly to the stockholders of the relator was an attempt by the relator to evade a formal declaration of a dividend, as well as an attempt to evade the stock transfer tax; that this device was resorted to by the relator because it feared the levying of the very tax in question. Of course, any attempt of this sort at evasion would be wholly ineffectual, if the stock were in fact dividends; but no matter what may have been the purpose of the relator, and no matter what may have been its fears, the fact remains that this stock was not dividends, but capital, and therefore not taxable under section 186 of the Tax Law.

There is no dispute about the excess dividends of $31,500. The tax on this, amounting to $945, should stand. It follows, however, from the reasoning above, that the tax on the $700,000 Norumbega stock should be canceled.

WOODWARD, J., concurs.