Charles J. Liebman et al., Individually and as Stockholders of Auto Strop Company, Appellants, *v.* Auto Strop Company et al., Respondents.

Corporations — dividends — stocks and stockholders — directors may, in their discretion, determine when and to what extent dividends shall be declared out of surplus — courts will not interfere unless bad faith is shown — stock of another corporation, held as surplus, legally distributable as a dividend — action by minority stockholders to have declared void declaration of dividend of stock of subsidiary corporation — Court of Appeals must affirm judgment affirming dismissal of complaint, where it is conclusively established by findings unanimously affirmed that dividend was declared in good faith and in the interest of the corporation and its stockholders.

1. It is within the discretion of directors of a corporation to determine when and to what extent a dividend shall be made, subject to the qualification that the same shall not encroach on the capital. Courts will not interfere with such discretion unless it be first made to appear that the directors have acted or are about to act in bad faith and for a dishonest purpose. Dividends, when declared, must be out of surplus or undivided profits, and if stock of another corporation be held which constitutes a part of the surplus or undivided profits, it is legally distributable among the stockholders as a dividend precisely the same as if it were cash.

2. Where, in an action to procure a judgment declaring void and enjoining the carrying out of a resolution, adopted by the board of directors of a corporation, to distribute as a dividend to its stockholders all of the stock of a subsidiary corporation held by it, the same being simply a surplus, findings of fact, unanimously affirmed by the Appellate Division, conclusively establish that the purpose of the declaration of the dividend was not to accomplish an ulterior object in the interest of a particular stockholder but that the same was in the interest of the corporation and all of its stockholders, the judgment of the Appellate Division affirming a dismissal of the complaint must be affirmed.

*Liebman* v. *Auto Strop Co.*, 212 App. Div. 306, affirmed.

(Argued December 3, 1925; decided January 12, 1926.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial

department, entered April 2, 1925, unanimously affirming a judgment in favor of defendants entered upon the report of a referee.

*Nathan L. Miller, Alfred A. Cook, Harold Nathan* and *H. Bartow Farr* for appellants. The findings made by the referee are not inconsistent with the findings requested by the plaintiffs as to the defendants' purpose in declaring the dividend. (*Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *Berizzi Co.* v. *Krausz,* 239 N. Y. 315; *Tenth National Bank* v. *Smith Construction Co.,* 242 Penn. St. 269; *Matter of Madura* v. *City of New York,* 238 N. Y. 214; *Brown* v. *Robinson,* 224 N. Y. 301; *Eaton* v. *Standard Oil Co.,* 100 Conn. 443; *Rockwell* v. *New Departure Mfg. Co.,* 128 Atl. Rep. 302; *McKay* v. *Gesford,* 124 Pac. Rep. 1016; *Field* v. *Copping,* 118 Pac. Rep. 329; *Lockwood, Jr., Inc.,* v. *Gross & Co.,* 99 Conn. 296; *Lucas* v. *Crofoot,* 95 Conn. 619; *McGuffey* v. *Pierce-Fordyce Oil Assn.,* 211 S. W. Rep. 335.) The judgment is not supported by the facts found. (*Geddes* v. *Anaconda Mining Co.,* 254 U. S. 590; *Billings* v. *Shaw,* 209 N. Y. 265; *Sage* v. *Culver,* 147 N. Y. 241; *Globe Woolen Co.* v. *Utica Gas & Electric Co.,* 224 N. Y. 483; *Davids* v. *Davids,* 135 App. Div. 206.)

*Frederick Collin, Thomas L. Hughes, Robert S. Johnstone* and *J. Arthur Leve* for respondents. The power and authority of the directors over the undivided profits or surplus is absolute so long as they act in the exercise of an honest judgment. (*Schwab* v. *Potter Co.,* 194 N. Y. 409; *Williams* v. *W. U. Tel. Co.,* 93 N. Y. 162; *Blancard* v. *Blancard,* 125 Atl. Rep. 337; *Hastings* v. *International Paper Co.,* 187 App. Div. 404; *Nauss* v. *Nauss Brothers Co.,* 195 App. Div. 318; *Dejonge* v. *Zentgraf,* 182 App. Div. 43; *Mitchell* v. *Des Moines & F. D. R. Co.,* 270 Fed. Rep. 465; *McNab* v. *McNab & Harlin Mfg. Co.,* 62 Hun, 18; 133 N. Y. 687; *Bickel* v. *Bickel Co.,* 184 Ky. 582;

*Thomas* v. *Laconia Car Co.*, 146 N. E. Rep. 775; *Goetz's Estate*, 236 Penn. St. 630.) The requested findings conflict with actual findings. (*Olbermann* v. *N. Y. & Northern Ry. Co.*, 77 Hun, 332; *Hart* v. *Ogdensburg, etc., R. R. Co.*, 89 Hun, 316; *Larsner* v. *Adair Machine Co.*, 137 N. Y. Supp. 565; *Allen* v. *Francisco Sugar Co.*, 193 Fed. Rep. 825; *Trask* v. *Chase*, 107 Me. 137.) Plaintiffs, in attacking the action of a board of directors, are bound to affirmatively prove that the directors acted dishonestly and fraudulently. Integrity is always presumed and it is assumed, until plaintiffs make the contrary to appear, that the directors acted honestly towards their corporation. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185; *Polhemus* v. *Polhemus*, 114 App. Div. 781, 786; *Walsh* v. *Goulden*, 130 Mich. 531.)

McLAUGHLIN, J. This action was brought to procure a judgment declaring a resolution adopted by the board of directors of the Auto Strop Company on the 16th of May, 1923, void and of no effect, and enjoining the defendants and each of them from carrying out such resolution in any respect. The answers of the defendants put in issue the material allegations of the complaint.

Upon the issue thus joined, the matter was sent to a referee to hear and determine. He reported in favor of the defendants and upon his report a judgment was entered dismissing the complaint. An appeal was taken to the Appellate Division by the plaintiffs where the judgment was unanimously affirmed and leave to appeal denied. Such leave was thereafter granted by this court. In order to appreciate the legal questions presented by the appeal, it is necessary to briefly state the material facts involved.

Sometime prior to 1906 the defendant Gaisman had obtained certain patents on the auto strop safety razor and for the purpose of exploiting such patents he, during the year named, associated with himself one O'Rourke. They, for that purpose, organized the Auto

Strop Company, with a capital stock of $200,000 consisting of 2,000 shares of the par value of $100, which was divided equally between Gaisman and O'Rourke. After the corporation had been organized they discovered that the corporation did not have sufficient working capital to successfully bring out and put upon the market what they deemed the pecuniary value of such patents and the products to be manufactured thereunder. In order to accomplish such result Gaisman and O'Rourke organized the Auto Strop Safety Razor Company, with a capital stock of $500,000 of which $400,000 was common and $100,000 preferred. All of the common stock was issued to the Auto Strop Company for an exclusive license to manufacture and sell, under the patents, auto strop safety razors and blades. The Auto Strop Company returned 498 shares of the razor company's stock to the treasury of the razor company in order to enable it to offer a bonus of the common stock to purchasers of its preferred stock. This left 3,502 shares of the common stock in the treasury of the Auto Strop Company. Out of the 3,502 shares, the Auto Strop Company distributed 1,000 shares as a dividend to its stockholders and after such distribution there remained in the treasury of the Auto Strop Company 2,502 shares.

In 1908 O'Rourke sold his 1,000 shares of the Auto Strop Company stock to Liebman, Klein, Lasher and Taussig; Liebman and Klein each becoming the owner of 333⅓ shares, and Lasher, representing Taussig and himself, becoming the owner of 333⅓ shares, the other 1,000 shares being held by Gaisman. After the purchase of the Auto Strop stock Liebman, who had been a director of the razor company, also became a director of the Auto Strop Company and secretary and treasurer of both companies. Klein also became a director of both companies.

Sometime in 1912 Liebman and Klein purchased the interest of Lasher and Taussig in the stock held by them.

Subsequently, Gaisman offered to accept less than one-third of such stock to which he deemed himself legally entitled. His offer, for one reason or another, was not accepted. It is apparent that he was anxious to obtain sufficient of the stock to give him control, and he ultimately did obtain two additional shares of this stock which gave him a majority.

At the time Gaisman obtained these two additional shares it is claimed, and the record seems to bear out such claim, that there was an agreement between him and Liebman and Klein to the effect that the minority stockholders should have a representative on the board of directors of both corporations, and that there should be unanimous consent of the directors as to certain matters including loans, salaries, etc. Gaisman claimed that the agreement was to the effect that the restrictive clauses referred to were to be kept in force only so long as Liebman and Klein were creditors of the razor company. This claim on the part of Gaisman as to the effect of the agreement was disputed by Liebman. The conclusion at which I have arrived, however, renders such dispute quite unimportant.

In December, 1913, the charter of the Auto Strop Company was amended so as to provide, in addition to cumulative voting in the election of its own directors, that stock in any other corporation should be voted at all elections of directors of such other corporations for the persons nominated for directors by the stockholders of the Auto Strop Company by cumulative voting. This amendment enabled Liebman and Klein each to name one director of the razor company by voting at a stockholders' meeting of the Auto Strop Company.

In February, 1914, Gaisman, Liebman and Klein signed a memorandum to the effect that Gaisman wished to acquire additional shares which would enable him to elect the entire board of the Auto Strop Company and

of the razor company, and that the Auto Strop Company was to have five directors of whom one was to be named by Klein, one by Liebman, and the remainder by Gaisman; that the razor company was to have seven directors of whom Klein and Liebman were to name one each and Gaisman the rest. On the day following this arrangement, the charter of the Auto Strop Company was amended so as to permit amendments to its charter only on a vote of four-fifths of its stockholders, and also to provide that no stock of the Auto Strop Company should be voted to authorize any alteration or amendment of the certificate of any other company unless authorized by unanimous vote or consent of all the directors of the Auto Strop Company. This amendment also contained other provisions; among them, one requiring the unanimous vote of all directors present in order to authorize the making of any contract of employment in excess of $3,000 per annum, or the making of any agreement relating to patents, trade marks, licenses, and loans, and the engaging in any manufacturing business. On the same day, in accordance with this amendment, the certificate of incorporation of the razor company was also amended. After such amendments to the charter and by-laws of the Auto Strop Company, unanimous consent of the directors was no longer necessary to any matter pertaining to the election of directors or the management of the corporation.

On the 16th of May, 1923, the directors of the Auto Strop Company voted to distribute as a dividend to its stockholders all of the stock of the razor company held by it. This resolution was opposed by Liebman and Klein. The purpose of this action is to prevent the carrying out of such resolution, the appellants claiming that the resolution was passed in bad faith; that to put the same into effect will be inequitable and detrimental not only to the rights of the plaintiffs but to the corporation.

After a careful consideration of this record I have no doubt as to the power of the majority of the directors of the Auto Strop Company to declare, by way of dividend, the stock of the razor company. This stock was simply a surplus. It was so regarded in 1906 when the 1,000 shares were distributed and it has remained so since. It is profit derived from the granting of the license under its patents. If the same were in money instead of stock, can there be the slightest doubt that the same might be distributed among its stockholders? It is a fundamental rule relating to the management of corporations that it is within the discretion of the directors to determine when and to what extent a dividend shall be made, subject of course to the qualification that the same shall not encroach on the capital. Courts will not interfere with such discretion unless it be first made to appear that the directors have acted or are about to act in bad faith and for a dishonest purpose. It is for the directors to say, acting in good faith of course, when and to what extent dividends shall be declared. Dividends, when declared, must be out of surplus or undivided profits. If stock of another corporation be held which constitutes a part of the surplus or undivided profits, it is legally distributable among the stockholders as a dividend precisely the same as if it were cash. (*Matter of Rogers*, 22 App. Div. 428; affd., 161 N. Y. 108; *People ex rel. Queens Co. Water Co.* v. *Travis*, 171 App. Div. 521; 219 N. Y. 571.) The statute confers upon the directors this power, and the minority stockholders are not in a position to question this right, so long as the directors are acting in good faith. That is the test and the fixed standard. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185.) This fact is well known to minority stockholders when they acquire stock in a corporation. The action of the majority directors must not amount to a fraudulent destruction or impairment of the rights of minority directors or

non-assenting stockholders. (*Godley* v. *Crandall & Godley Co.*, 212 N. Y. 121.) The declaration of a dividend must be for the benefit of all. If it is done solely for the purpose of benefiting the majority to the detriment of the minority, then a court of equity will never hesitate to exercise its equitable powers to prevent the perpetration of the wrong by which the majority are seeking to impose upon the minority. But before a court of equity will interfere with the action of a majority of the directors, facts must be presented from which the court can find that such action has underlying it a fraudulent purpose and corrupt intent. Obviously, if such action is for the benefit of the corporation, which includes all of the stockholders, bad faith or a fraudulent and corrupt intent cannot arise or be inferred.

Applying what has been said to the facts as found by the referee, which findings have been unanimously affirmed by the Appellate Division, it necessarily follows, as it seems to me, that the judgment appealed from must be affirmed. The referee found that the resolution declaring the dividend was not dishonest or designed by the defendants Gaisman, Maas and Coleman, or any of them, to be against the best interests of the Auto Strop Company or any of its stockholders; that the distribution, directed by the resolution, of the shares of stock of the razor company was not and is not injurious or detrimental to the plaintiffs or any of them or to the Auto Strop Company; that the declaration of such dividend was the corporate act of the defendant Auto Strop Company and was for the best interests of both companies; that the majority of the directors of the Auto Strop Company passed said resolution in the exercise of their best and honest judgment; that in doing so they acted in good faith and in an honest belief that their action was for the best interest of the Auto Strop Company and of its stockholders; that in passing said resolutions the defendants Gaisman, Maas and Coleman did not, nor did any

1926.]                     Statement of case.                [241 N. Y. 435]

of them, intend to further any personal or selfish interest of themselves, or any other defendant; that they acted honestly and in good faith.

These findings, having been unanimously affirmed, conclusively establish that the purpose of the declaration of the dividend was not " to accomplish an ulterior object in the interest of a particular stockholder," but, on the contrary, that the same was in the interest of the corporation and, if so, necessarily in the interest of all the stockholders.

Having reached this conclusion, it is unnecessary to consider or pass upon the other questions presented by the briefs and on the oral argument, however interesting they ·may be.

The judgment appealed from should be affirmed, with costs.

CARDOZO, POUND, CRANE and ANDREWS, JJ., concur with McLAUGHLIN, J.; HISCOCK, Ch. J., concurs in result; LEHMAN, J., not voting.

Judgment affirmed.