I am of the opinion, therefore, that, irrespective of the errors to which reference has been made, the judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur. LAUGHLIN, J., concurs on last ground.

---

(162 App. Div. 81)

EQUITABLE LIFE ASSUR. SOCIETY OF UNITED STATES v. UNION PAC. R. CO.   (No. 5720.)

(Supreme Court, Appellate Division, First Department.   May 1, 1914.)

1. CORPORATIONS (§ 156*)—STOCKHOLDERS—PREFERRED STOCKHOLDERS.

As a rule the rights of preferred stockholders depend upon the interpretation of the particular constating instruments, such as the governing statute, the by-laws, a vote of shareholders, resolution of the directors, etc.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603;  Dec. Dig. § 156.*]

2. CORPORATIONS (§ 156*)—RIGHTS OF STOCKHOLDERS—PREFERRED STOCKHOLDERS—STOCK DIVIDENDS.

The articles of association of a railroad corporation provided that the preferred stock should be entitled, in preference and priority over the common stock, to dividends at such rate not exceeding 4 per cent. payable out of the net profits, as shall be declared by the board of directors and shall be entitled to no other or further share of the profits. After the regular dividend had been declared and paid upon the preferred stock, the board of directors declared an extra dividend out of the accumulated surplus, consisting of the capital stock of another railroad company which had been acquired as an investment which was charged to the profit and loss account, and also declared that the accumulated unappropriated surplus profits exceeded the amount necessary to pay such dividends. *Held*, that the preferred stockholders were not entitled to share in the extra dividend declared;  the profits accumulated in excess of the charter capital stock constituting a surplus of profits out of which dividends may be declared on the common stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603;  Dec. Dig. § 156.*]

3. CORPORATIONS (§ 174*)—STOCKHOLDERS—RELATION WITH CORPORATION.

The relation of the several classes of stockholders to each other and to the corporation is purely contractual unless controlled by statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652; Dec. Dig. § 174.*]

Appeal from Special Term, New York County.

Action by the Equitable Life Assuance Society of the United States against the Union Pacific Railroad Company.   From an order granting a motion to dismiss the complaint, plaintiff appeals.   Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, and DOWLING, JJ.

Alexander & Green, of New York City (Charles W. Pierson, of New York City, of counsel, and Allen McCulloh and Campbell E. Locke, both of New York City, on the brief), for appellant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Henry W. Clark, of New York City (John G. Milburn, of New York City, of counsel, and Henry W. Clark and George A. Ellis, both of New York City, on the brief), for respondent.

CLARKE, J.  Plaintiff, a domestic corporation, and owner of 16,182 shares of preferred stock of the defendant railroad corporation, incorporated under the laws of Utah, brings this suit on behalf of itself and of all other holders of such preferred stock who may elect to become parties plaintiff and share in the expense and benefits of the litigation.  The following facts appear from the complaint:

In 1901 and 1902, the defendant purchased $90,000,000 of common stock of the Southern Pacific Company and $78,000,000 of stock of the Northern Pacific Railway Company, and thereafter transferred said stock to the Oregon Short Line Railroad Company, a corporation subsidiary to and entirely controlled by defendant.  Said stocks were paid for with the proceeds of the sale of the following bonds:  $100,000,000 face value first lien 4 per cent. convertible gold bonds, which bonds were thereafter to the extent of $99,450,000 converted by the holders into a like amount of the common stock of the defendant; $31,000,000 face value 4 per cent. participating 25-year gold bonds of said Oregon Short Line Railroad Company, which bonds were thereafter redeemed from proceeds of sale of about $32,625,000 face value of 4 per cent. 25-year refunding bonds of said Oregon Short Line Railroad Company.

In 1902, the Northern Pacific Railway Company stock aforesaid was exchanged for upwards of $82,000,000 par value of stock of the Northern Securities Company.  In 1905, upon the dissolution of the Northern Securities Company, said Oregon Short Line Railroad Company sold a part of its holdings of stock of said Northern Securities Company and received in exchange for the balance of said holdings a large amount of the stocks of the Northern Pacific Railway Company and Great Northern Railway Company theretofore held in the treasury of the said Northern Securities Company.  Thereafter said Oregon Short Line Railroad Company sold the entire amount of stocks of the Northern Pacific Railway Company and the Great Northern Railway Company so acquired by it and reinvested the proceeds in stock of various other companies including $32,334,200 par value of common and $7,206,400 of preferred stock of the Baltimore & Ohio Railroad Company.  In 1913, pursuant to a decree entered in a suit brought by the United States against the defendant and said Oregon Short Line Railroad Company requiring said companies to dispose of the Southern Pacific Company's stock then held by them, said Oregon Short Line Railroad Company exchanged with the Pennsylvania Railroad Company $38,292,400 of the Southern Pacific Company stock held by it for $21,273,600 of common, and $21,273,600 of preferred stock of the Baltimore & Ohio Railroad Company.  The capital stock of the Baltimore & Ohio Railroad Company acquired as aforesaid to the amount of $28,480,000 of preferred and $53,607,800 common stock was thereafter acquired·by defendant from the Oregon Short Line Railroad Company.

The proceeds of the sales, as alleged, of stocks of the Northern Securities Company, Northern Pacific Railway Company, and Great Northern Railway Company exceeded by the amount of $58,684,157 the cost of the stock of the Northern Pacific Railway Company from which said securities were derived, and after the sale this amount was credited by the Oregon Short Line Railroad Company to its profit and loss account and paid by it as a special dividend to the defendant 'as the holder of all its capital stock, and said amount was credited by defendant to its profit and loss account, and is included in its surplus as claimed. Various items of excess over cost realized by defendant on the sale of the other stocks and securities have likewise been credited to its profit and loss account and included in its claimed surplus.

In July, 1907, defendant issued and sold bonds known as its 20-year 4 per cent. convertible gold bonds, realizing upon said sale 90 per cent. of the face value thereof in cash and charging to said profit and loss account the discount of 10 per cent. Said bonds, by their terms, are convertible at the option of the holders into common capital stock of the defendant at the rate of $175 face value of such bonds for $100 par value of such stock. Prior to January 8, 1914, of the bonds so issued there were surrendered for conversion $37,025,800 face value and in exchange therefor and upon the retirement of said bonds there was issued to the holders common capital stock of the defendant to the amount of $21,157,600 par value. The net reduction of defendant's liabilities resulting from said bond conversion, to wit, the sum of $15,868,200, has been credited by defendant to said profit and loss account and is included in the surplus claimed by it.

The defendant by its charter and the laws of Utah is authorized to issue preferred and common stock, and now has outstanding 995,435 shares of the par value of $99,543,500 of preferred and 2,166,624 shares of the par value of $216,662,400 of common stock. The articles of association of said corporation provide as follows with regard to the respective priorities of said two classes of stock:

"Such preferred stock shall be entitled, in preference and priority over the common stock of said corporation, to dividends in each and every fiscal year, at such rate not exceeding four per cent. per annum, payable out of net profits, as shall be declared by the board of directors. Such dividends are to be noncumulative, and the preferred stock is entitled to no other or further share of the profits."

And it is alleged that:

"In all other respects said preferred and said common stock are entitled under said articles of association and the laws of Utah to equal rights in said corporation and its assets."

On January 8, 1914, the directors of defendant declared an extra dividend upon its common capital stock, payable April 1, 1914, consisting of the following amounts upon each share: First, $3.00 in cash; second, $12.00 par value of preferred capital stock of the Baltimore & Ohio Railroad Company; and third, $22.50 par value of common capital stock of the Baltimore & Ohio Railroad Company. The value of the stocks and cash proposed to be distributed by way of such extra dividend is approximately $80,000,000.

The dividend of 4 per cent. per annum has been regularly declared and paid upon the preferred stock. Defendant's board of directors resolved that the extra dividend declared as aforesaid on January 8, 1914, was declared out of accumulated surplus of defendant and that the capital stock of the Baltimore & Ohio Railroad Company which should be disposed of pursuant to said dividend declaration be charged to defendant's profit and loss account, and expressly found and declared that the accumulated unappropriated surplus profits of defendant exceeded the amount necessary to pay such dividend. While the complaint expressly alleges "that the aggregate value of the assets of the defendant exceeds the aggregate amount of its outstanding capital stock and liabilities by the amount of the surplus or credit balance to its said profit and loss account," it is claimed that the stock of the Baltimore & Ohio Railroad Company and the funds from which the proposed dividend is to be paid constitutes a capital asset of the defendant and forms a part of the corpus of its property, and that plaintiff and the other holders of preferred stock are entitled to share pro rata with the holders of common stock in any distribution of capital assets or accretions of capital. Wherefore judgment is demanded that defendant be enjoined and restrained from distributing the said Baltimore & Ohio Railroad Company's stock or any other capital assets or accretions of capital among the holders of common to the exclusion of plaintiff and other holders of preferred stock.

The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action and moved for judgment upon the pleadings. From the order granting said motion and dismissing the complaint, this appeal is taken.

It is conceded that the preferred stock has received the full amount of its preferential dividend as provided by the articles of association, to wit, 4 per cent. It is conceded that, if the dividend in question had been declared out of surplus profits derived from the ordinary operation of the defendant railroad company, the preferred stockholders would have no claim thereon; the full amount of such surplus profits being applicable to the payment of dividends upon the common stock. The concrete question is therefore presented, it being conceded that by the payment of such dividend there would be no impairment of the capital, that is, that independently thereof the company has sufficient assets to meet all its liabilities and to satisfy the face value of all outstanding certificates of shares of capital stock, whether gains and profits made by fortunate investment and in converting its bonds into common stock are distributable as dividends in the discretion of its board of directors in precisely the same manner as gains and profits made in operation, to wit, to the common stockholders only, to the exclusion of the preferred, whose contractual rights have been fully met.

It must be borne in mind at the outset that the matter under discussion is one of corporation law. It arises and must be decided between the corporation and its several classes of stockholders. The law applicable to wills and to trust estates, to life tenants, and remaindermen is beside the mark. It is also to be borne in mind that the defendant railroad corporation is a prosperous, solvent, and going

concern; that no question of the rights of creditors is presented; that there is no question of taxation involved, nor of dissolution and distribution of assets thereafter. So that the authorities and discussion, appropriate under some one or other of the foregoing titles, are not only of no help, but positively misleading in the matter at bar. A pure question of corporation law is presented and the interpretation of the contract with the preferred stockholders evidenced by the articles of association.

[1] As said in 10 Cyc. 571, of the rights of preferred shareholders:

"An examination of the cases shows in most instances that the questions which have arisen with respect to the rights of preferred shareholders are questions of interpretation depending upon the terms of the particular constating. instrument, let us say the governing statute, the by-law, the vote of the shareholders at general meeting, the resolution of the directors, and the recitals in the certificate of preferential shares, rather than upon the general principles of law."

[2] The "constating instrument" set forth in the complaint is the provision of the articles of association.

"Such preferred stock shall be entitled, in preference and priority over the common stock, * * * to dividends in each and every fiscal year, at such rate, not exceeding four per cent. per annum, payable out of net profits, as shall be declared by the Board of Directors. Such dividends are to be noncumulative, and the preferred stock is entitled to no other or further share of the profits."

[3] That the relation of classes of stockholders to each other and to the corporation is, unless governed by statute, purely contractual is thoroughly established:

In People ex rel. Browne v. Koenig, 133 App. Div. 756, 118 N. Y. Supp. 136, this court said:

"Unless expressly forbidden by statute, the articles of incorporation may divide the stock into common and preferred, and may provide that the preferred stockholders shall be deprived of voting power in consideration of the preferences over the common stock which is given them. Such a provision is but an arrangement between two classes of stockholders which does not concern the public and does not violate any rule of the common law or any rule of public policy."

In Roberts v. Roberts-Wicks Co., 184 N. Y. 257, 77 N. E. 13, 3 L. R. A. (N. S.) 1034, 112 Am. St. Rep. 607, 6 Ann. Cas. 213, Gray, J., said:

"In the charter and in the certificates issued to the preferred stockholders, it was stated, most explicitly, what was the nature of the preference, which was accorded to that class of stockholders. * * * This was a valid contract between the company and the preferred stockholders, which was binding upon all other stockholders. Kent v. Quicksilver Mining Co., 78 N. Y. 159, 180. Each class of stock was a part of the whole capital stock, and both classes were made by the charter alike, in all respects, except in the one respect that the preferred stock was entitled to have 'the surplus profits arising from the business' appropriated, in first order, to the payment of six per cent. dividends, cumulatively. Now this was as much an agreement of the common stockholders, as it was the agreement of the corporation and the right of the preferred stockholders was inviolable."

In the Kent Case, cited, Folger, J., said:

"We know nothing in the Constitution or the law that inhibits a corporation from beginning its corporate action by classifying the shares in its capi-

tal stock, with peculiar privileges to one share over another, and thus offering its stock to the public for subscription thereto. * * * When that by-law was adopted, it was as much the law of the corporation as if its provisions had been a part of the charter. * * * Thereby, and by the certificate, as between it and every stockholder, the capital stock of the company was fixed in amount, in the number of shares into which it was divisible, and in the peculiar and relative value of each share. The by-law entered into the compact between the corporation and every taker of a share; it was in the nature of a contract between them. * * * The certificate of stock is the muniment of the shareholder's title, and evidence of his right. It expresses the contract between the corporation and his co-stockholders and himself."

It would seem, therefore, that the preferred stockholder had expressly and explicitly contracted that after he had received his preferential four per cent. he would be entitled to "no other or further share of the profits."

But appellant says, This dividend which you have declared is not a share of the profits but of capital; when capital is divided, I am entitled to share pro rata with the common stockholder. This contention seems to have been conclusively answered by the courts.

In Williams v. Western Union Telegraph Co., 93 N. Y. 162, in considering the provisions of chapter 18, pt. 1, tit. 4, § 2, of the Revised Statutes forbidding directors to make dividends excepting from the surplus profits arising from the business of such corporation, Judge Earl said:

"All these provisions show that it was the purpose of the Legislature, by means of them, to create a property capital for the corporation, and then to keep that intact so as to secure the solvency of the corporation and its responsibility to its creditors. The 'capital stock' in this section does not mean share stock, but it means the property of the corporation contributed by its stockholders or otherwise obtained by it, to the extent required by its charter. While the term 'capital stock' is frequently used in a loose and indefinite sense, in this section and in legal phrase generally it means that and no more. In State v. Morristown Fire Association, 23 N. J. Law, 195, Green, Ch. J., said: 'The phrase "capital stock" is very generally, if not universally, used to designate the amount of capital to be contributed for the purposes of the corporation. The amount thus contributed constitutes the "capital stock" of the company.' In Burrall v. Bushwick R. R. Co., 75 N. Y. 211, Folger, J., defined 'capital stock' as 'that money or property which is put in a single corporate fund by those who by subscription therefor become members of a corporate body.' In Barry v. Merchants' Exchange Co., 1 Sandf. Ch. [N. Y.] 280, Vice Chancellor Sandford said: 'The capital stock of a corporation is like that of a copartnership or joint-stock company, the amount which the partners or associates put in as their stakes in the concern.' By loss or misfortune, or misconduct of the managing officers of a corporation, its capital stock may be reduced below the amount limited by its charter; but whatever property it has up to that limit must be regarded as its capital stock. When its property exceeds that limit, then the excess is surplus. Such surplus belongs to the corporation and is a portion of its property, and, in a general sense, may be regarded as a portion of its capital; but in a strictly legal sense it is not a portion of its capital, and is always regarded as surplus profits. The very section we are considering contemplates that there may be a surplus, and that such surplus may be divided. The surplus may be in cash, and then it may be divided in cash; it may be in property, and, if the property is so situated that a division thereof among the stockholders is practicable, a dividend in property may be declared, and that may be distributed among stockholders. All such dividends diminish and deplete the property of the corporation, and that section was designed to prevent dividends of property

which tended to· deplete the assets of the company below the sum limited in its charter as the amount of its capital stock."

After discussing the propriety of issuing shares of stock to represent the accumulated surplus, and holding that such section was valid, Judge Earl proceeded to say:

"But if it can be conceived that this was a dividend of property within the meaning of the section of the Revised Statutes above set out, then what property did it divide? Not any portion of the capital of the company; that remained intact. After subtracting the dividend, there remained to the company the full amount of its prior capital stock, to wit, property to the value of $41,073,410. Such is the finding of the trial court, and that cannot here be disputed. The company had made surplus earnings which it could have divided, but instead of dividing them it had invested them in property to facilitate and enlarge its business; and such property was found to be worth $15,526,590. That sum constituted its surplus. It was commingled with the other property of the company and used for corporate purposes. But it was not beyond the reach of the dividend-making power of the directors. They could reclaim it for division among the stockholders, and, if practicable, convert it into cash for that purpose. They could borrow money on the faith of it and divide that. They could issue to the stockholders certificates of indebtedness, redeemable in the future, representing their respective interests in such surplus, thus, in effect, borrowing the same of the stockholders. Desiring to use the surplus and add it to the permanent capital of the company, and having lawfully created shares of stock, they could issue to the stockholders such shares to represent their respective interests in such surplus. In doing these things no law would be violated, the capital would be kept intact, and no stockholders or creditors would have any legal right to complain. All this, however, depends upon the finding of the trial court that the surplus is equal to the dividend. * * *

"When a corporation has a surplus, whether a dividend shall be made, and, if made, how much it shall be, and when and where .it shall be payable, rest in the fair and honest discretion of the directors uncontrollable by the courts. (Citing cases.) There is no statute which requires dividends in telegraph companies or in companies generally to be made in cash. Whether they shall be made in cash or property must also rest in the discretion of the directors. There is no rule of law or reason founded upon public policy which condemns a property dividend. The directors could convert the property into cash before a dividend and divide that. So the stockholders can take the property divided to them and sell it and thus realize the cash. Within the domain of law, it can make· no material difference which course is pursued."

In Christensen v. Eno, 106 N. Y. 97, 12 N. E. 648, 60 Am. Rep. 429, Judge Andrews said:

"Strictly, the capital stock of a corporation is the money contributed by the corporators to the capital, and is usually represented by shares issued to subscribers to the stock on the initiation of the corporate enterprise."

In Roberts v. Roberts-Wicks Co., supra, the court said:

"The charter and the contract made them alike in all respects except as to dividends. Dividends, as the rule, are not payable out of the capital of a corporation; but only from the surplus profits arising from the business carried on and that was the contract here. When the property of a corporation has accumulated in excess of its chartered capital, the excess may be regarded and dealt with as constituting a surplus of profits."

As it is expressly alleged that the payment of this proposed dividend in no way impairs the capital, and that there remain sufficient assets to meet all the liabilities of the corporation to creditors and stockholders, it would seem that the property accumulated in excess of its

chartered capital constitutes a "surplus of profits" and· may be so "regarded and dealt with."

In a recent case in this court (Russell v. American Gas & Electric Co., 152 App. Div. 136, 136 N. Y. Supp. 602), a preferred stockholder sought to restrain the corporation from selling certain treasury stock to the common stockholders at par. Mr. Justice·McLaughlin said:

"The principal ground of plaintiff's alleged cause of action, as set forth in his complaint, is that the holders of common stock have been given the right to subscribe, at par, for stock which is worth about $30 more than par, while the same right has not been extended to the holders of the preferred stock. I am unable to see how the plaintiff can sustain his alleged cause of action, or that he has any reason to complain. Where a corporation has property in excess of the amount of its capital stock, the excess is surplus which may be divided among the stockholders entitled to share therein, either in money or property. Williams v. Western Union Tel. Co., 93 N. Y. 162. As a holder of the preferred stock, the plaintiff could claim no interest in such excess. So long as the dividends upon his stock were paid, and the defendant had property equal in value to the amount of its outstanding capital stock, after the payment of its debts, the corporation, if it saw fit to do so, could distribute all the rest of its assets among the holders of its common stock, and the plaintiff would have no cause for complaint. It is not claimed that the capital stock of the defendant has been impaired, or that it could not legally issue the additional stock at par. That being so, whatever value the stock had above par represented surplus and was available for distribution among the holders of its common stock. Whether this was done by selling the stock · at its market value and then distributing the excess, or by issuing the stock to the holders of the common at par, does not concern the plaintiff. He cannot insist that the corporation build up a large surplus nor object to a distribution of its property, when duly authorized, among the holders of common ·stock, so long as his dividends are paid and its capital remains unimpaired."

I am of the opinion that the rights of the preferred stockholders are strictly contractual, and that so long as the ·corporation is a solvent and going concern they are restricted to the preferential dividend provided for in any distribution of the surplus profits or gains, however derived. It is not questioned that, at the time when made, the investment in the stocks of the other corporations was lawful. The profit on such transaction—that is, the excess on sale over cost—was no other than the profit on any other lawful business or transaction of the company. During the lean years the preferred stock may get all the distributable profit. It cannot complain that in prosperous years it be confined to the express bargain entered into. The very classification is for this precise purpose. The preferred stock gets the better bargain in the beginning, the common takes its chance; but its purchaser is not to be deprived of the reward of his courage and faith in the future of the company.

We have examined with care all of the cases cited in the brief of the learned counsel for the appellant; but, as pointed out early in this opinion, authorities upon other titles in the law afford no help. The case most strongly relied upon is In re Bridgewater Navigation Co., L. R. 39 Ch. Div. 1, 17, 14 App. Cases, 525. But in that case, the company sold out its entire plant and went out of business, and the question was not the proper division of profits or surplus of a going concern, but of final liquidation and distribution. If the defendant was now in liquidation, the rights of the two classes of stockholders would

present a question which is not before us and upon which we decline to pass.

As the defendant is a going concern, we are convinced that the preferred stockholders are not entitled to participate in the dividend under consideration, that the complaint does not state facts sufficient to constitute a cause of action, and that the order appealed from should be affirmed, with $10 costs and disbursements to the respondent. All concur.