In the Matter of the Estate of MARY BARNEY MARVIN, Deceased.

Surrogate's Court, New York County, September 3, 1929.

*Larkin, Rathbone & Perry,* for the Central Hanover Bank and Trust Company as trustee, petitioner.

*Armstrong, Kuth & Kern,* for the life tenant, Charles Brandt, Jr., special guardian.

FOLEY, S. This is an accounting by a trustee in which dispute has arisen over the apportionment of a stock dividend between the life tenant and remaindermen. The parties since the filing of the account have stipulated the facts.

The testatrix bequeathed one-third of her holdings in the stock of the Continental Fire Insurance Company of New York to the accounting trustee in trust for the benefit of the Rev. Andrew G. Wilson for life, with remainder over to three nieces and her godchild. Mrs. Marvin died on June 6, 1923. At that time the trust consisted of 570 shares of the Continental Fire Insurance Company of the par value of twenty-five dollars each, which were subsequently exchanged for 1,425 shares of the par value of ten dollars each. On January 4, 1928, the trustee received $712\frac{1}{2}$ additional shares as a fifty per cent stock dividend.

The first question raised concerns the date to be taken upon which to base an allocation of the stock dividend in question. It appears that on November 10, 1927, the directors of the Continental Fire Insurance Company voted to capitalize surplus to the extent of $5,000,000, and declared a stock dividend of fifty per cent therefrom. This resolution contained the following language:

" WHEREAS, this Company has accumulated and is in possession of a fund equalling thirty per cent (30%) of its unearned premiums, in addition to the amount of its capital stock and all outstanding liabilities, including the amount of all unearned premiums on unexpired risks and policies, * * *

" *Now, Therefore, be it Resolved,* that the Board of Directors of this Company, by at least three-fourths thereof, hereby authorizes an increase of capital stock of this Company from Ten Million Dollars ($10,000,000) to Fifteen Million Dollars ($15,000,000), such increase

to be made from the above described fund and to be distributed pro rata to the stockholders of this Company as hereinafter provided, * * *

*It Is Further Resolved,* that provided an increase in the capital of this Company from $10,000,000 to $15,000,000 be duly authorized at the special meeting of stockholders hereby directed to be called for the purpose, and duly approved by the Superintendent of Insurance, this Board, on behalf of this Company, *hereby declares a stock dividend,* payable December 30, 1927, to stockholders of record December 12, 1927, of $5,000,000, which shall consist of 500,000 shares of the capital stock of this Company of the par value of $10 each, if the number of shares of the capital stock of the Company shall then (namely on December 30, 1927) have been increased and the par value thereof changed, as herein provided, but shall consist of 200,000 shares of the par value of $25 each if no change shall then have been made in the number of shares into which the capital of this Company is divided and in the par value thereof; and this Board further directs that such shares be distributed pro rata to stockholders of this Company of record December 12, 1927, such distribution to be made where and when necessary in fractional share certificates of stock, and for that purpose the officers of this Company are directed to transfer on the books of the Company $5,000,000 from surplus account to capital account * * *.''

The action of the board of directors was approved at a meeting of the stockholders held on December 1, 1927. The increase in capital stock was subject, however, under the Insurance Law, to the approval of the Superintendent of Insurance (Ins. Law, §§ 52, 117, as amd.),* and the payment of the stock dividend was, by the terms of the resolution declaring it, subject to this approval being subsequently obtained. The certificate approving the increased capital stock was issued by the Superintendent of Insurance on December 14, 1927.

The remaindermen contend that the capital and surplus of the Continental Fire Insurance Company as of November 10, 1927, the date of declaration, should be taken as the basis for apportioning the stock dividend. On the other hand, the life beneficiary claims that December 14, 1927, the date of approval by the Superintendent of Insurance, is the proper date. An alternative date is December 1, 1927, when the stockholders approved of the increase in stock. Neither side, however, advocates the adoption of the latter date.

---

* Section 52 was amended by Laws of 1924, chap. 546, and subds. 2 and 3 of that section were amended by the Laws of 1929, chap. 171, and the Laws of 1927, chap. 164, respectively. Section 117 was last amended by the Laws of 1923, chap. 435.— [Rep.

I hold that in the apportionment of the stock dividend in question the capital and surplus of the company on November 10, 1927, the date of its declaration by the board of directors, should be the criterion on which to base the apportionment sought herein. (*N. Y. Trust Co.* v. *Edwards*, 274 Fed. 952; affd., 257 U. S. 176.) The formalities necessary under the Insurance Law before the capital could be increased did not affect the fund from which it was to be paid, nor the time of its accumulation. No matter when the stock dividend was payable, or what conditions had to be met before the increase in capitalization could be made, the basic fact remains that the stock dividend was to be paid out of capital and surplus accumulated up to November 10, 1927, when the directors declared it. The language of the resolution of the board of directors quoted above is clearly indicative of this fact. The requisites of the approval of the stockholders and the Superintendent of Insurance related back to the time of action by the board of directors and the corporate financial situation before them at that date.

The second question involved is whether profits made by the company in the sale of securities during the period of the trust which are included in the capital and surplus account, are to be treated as income or accretions to capital. The capital and surplus accounts of the Continental Fire Insurance Company also include increases from the date of their purchase in the market valuation of stocks and bonds held by it. The parties are in accord that market value increases should be deducted from the capital and surplus account in computing the book value of the stock. (*Thayer* v. *Burr*, 201 N. Y. 155.) During the period of the trust, however, large profits were made by the company from the actual sale of securities. These profits I hold to be income and not deductible from the capital and surplus account. They were corporate earnings and profits made in the usual course of conducting the business of this company during the period of the trust, and must be so regarded in the disposition of this matter. This is not a case where a distribution in kind of the securities of other concerns acquired by the company declaring a stock dividend is made. In such cases, if they had been purchased before the trust was set up, they belong to capital. If they had been purchased from earnings after the trust was set up, they belong to the life beneficiary. On the other hand, if they were acquired by earnings accumulated both before and after the trust was set up, they must be allocated under the rules laid down by the Court of Appeals in *Thayer* v. *Burr* (*supra*); *Matter of Osborne* (209 N. Y. 450); *Bourne* v. *Bourne* (240 id. 172) and *U. S. Trust Co.* v. *Heye* (224 id. 242). It is immaterial here whether the stocks upon which this profit was made were originally acquired before the

trust began, or after, or both before and after. Neither the securities themselves nor the entire selling price of the securities sold are being distributed, but the profits realized on the sale of securities only. I hold, therefore, that the profits actually realized from the sale of securities during the period of the trust are income and not capital increase. (*Equitable Life Assurance Soc.* v. *Union Pacific R.R. Co.*, 162 App. Div. 81; affd., 212 N. Y. 360; *People ex rel. Queens Co. Water Co.* v. *Travis*, 171 App. Div. 521; affd., 219 N. Y. 571.)

The third question has to do with the allowance of commissions to the accounting trustee on the stock allocated under this decision to income. The accounting trustee is entitled to commissions on the stock to be paid to the life beneficiary. The decree, however, may provide for the delivery of the entire amount of the stock allocated to the life tenant to him upon his paying to the trustee in cash the amount of commissions to be allowed in the decree. If such payment cannot be made by the life tenant, the question of a sale of the necessary stock to meet the amount of the commissions, or the making of some other arrangement for payment will be determined upon the settlement of the decree herein.

4. The accounting trustee has included in his account a payment from *income* of the sum of $1,000 on account of attorney's fees. The life beneficiary objects to this. The objection is sustained. Attorney's fees and the other fees and expenses incident to this accounting are properly payable out of principal and not out of income. (*Matter of Eddy*, 207 App. Div. 162; *Matter of Bendit*, 124 Misc. 697; *Matter of Petremont*, 213 App. Div. 318; affd., 241 N. Y. 586.)

From the facts stipulated I find that the stock dividend involved herein should be apportioned as follows: 92.8655 shares payable to principal, and 619.6345 payable to income.

Tax costs and submit decree on notice.