In the Matter of the Accounting of WILLIAM P. HALE, as Executor of and Trustee under the Will of JUSTUS MILLER, Deceased.

JAMES S. MILLER et al., Appellants; MARY E. HALE, as Executrix of WILLIAM P. HALE, Deceased, Respondent.

(Argued September 29, 1931; decided November 17, 1931.)

*James Farrell* for James S. Miller et al., appellants. The Surrogate's Court had no jurisdiction over the undistributed trust fund or over the income therefrom. (*Matter of Weaver*, 156 App. Div. 927; *Matter of Lee,*

220 N. Y. 532; *Schuehle* v. *Reiman*, 86 N. Y. 270; *Hopkins* v. *Kent*, 145 N. Y. 363.) The Surrogate's Court had no jurisdiction over the rents of the real estate, nor over the proceeds of sale of the real estate. (*Watkins* v. *Reynolds*, 123 N. Y. 211; *Levy* v. *Levy*, 33 N. Y. 97; Real Prop. Law, § 109; *Hopkins* v. *Kent*, 145 N. Y. 363.) That part of the Supreme Court judgment which provides that the plaintiffs therein retain the control and management of all the real estate comprised within the trust estate was wholly unauthorized and was illegal and void. (*Clapp* v. *McCabe*, 155 N. Y. 525; *Watkins* v. *Reynolds*, 123 N. Y. 211; *Minion* v. *Warner*, 238 N. Y. 413.)

*William C. Gordon* for Herbert Baucus et al., appellants. The Surrogate's Court after termination of the trust, followed by the accounting and judgment of judicial settlement in the Supreme Court, had no jurisdiction to hear and determine the proceeding. (Real Prop. Law, § 109; Pers. Prop. Law, § 11; *Watkins* v. *Reynolds*, 123 N. Y. 211; *Cussack* v. *Tweedy*, 126 N. Y. 81; *Embury* v. *Sheldon*, 68 N. Y. 227; *Matter of Baldwin*, 120 Misc. Rep. 226; Surr. Ct. Act, § 258; *Matter of Finck*, 103 Misc. Rep. 526; *Matter of Van Kleeck*, 95 Misc. Rep. 40; 177 App. Div. 917; *Matter of Allen*, 111 Misc. Rep. 93; 202 App. Div. 810; 236 N. Y. 503.) In any event, the Surrogate's Court had no jurisdiction of the rents of the real estate which formed no part of the trust estate since the death of the life tenant in 1919, or of the proceeds of sale of real estate forming no part of the trust and sold by the trustee without authority, after the termination of the trust, nor has it jurisdiction of the undistributed trust fund, or the increments thereof. (*Matter of Overton*, 89 Misc. Rep. 59; *Matter of Saurez*, 158 N. Y. Supp. 140; *Matter of Bolton*, 157 N. Y. 393.) The trustees, upon the termination of the trust, having invoked the jurisdiction of the Supreme Court where all their previous accountings were had, and that court having exercised its jurisdiction

and by its decree having finally judicially settled their accounts and directed the distribution and the filing of receipts in that court showing payment of the balance on hand to those entitled thereto, and allowed the commissions and all expenses of distribution, legal or otherwise, which have been paid, the petitioner cannot now, by reason of his failure to comply with that decree, invoke the jurisdiction of the Surrogate's Court. (*Matter of Cary*, 77 Misc. Rep. 602; 155 App. Div. 946; *Schuehle* v. *Reiman*, 86 N. Y. 270; *Wegman* v. *Childs*, 41 N. Y. 159; *Matter of Ayrault*, 81 Hun, 107; 146 N. Y. 389.) The provision in the Supreme Court judgment permitting trustees to retain control and management of the real estate is unauthorized and ineffectual to continue the trust. (Civ. Prac. Act, § 479; *Simonson* v. *Blake*, 12 Abb. Pr. 331; *Mathot* v. *Triebel*, 102 App. Div. 426; *Clapp* v. *McCabe*, 155 N. Y. 525; *Manhattan Beach Co.* v. *Bonner*, 123 Misc. Rep. 441.)

*Michael D. Reilly* and *Herbert D. Hamm* for respondent. The appellants are estopped from questioning the validity of the judgment of the Supreme Court, the propriety of the continued administration of the trust properties by the trustees, or their right to further account as to their administration of such properties. (*Houghton* v. *Thomas*, 220 App. Div. 415; *Giles Dyeing Machine Co.* v. *Klander-Weldon Dyeing Machine Co.*, 233 N. Y. 270; *Hamilton* v. *Munice*, 182 App. Div. 630; *Muller* v. *Naumann*, 85 App. Div. 337; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Matter of Watson*, 213 N. Y. 177; *Matter of Parker*, 118 Misc. Rep. 121; 204 App. Div. 876; 236 N. Y. 583; *Matter of Leverich*, 135 Misc. Rep. 774.) In any event the judgment of the Supreme Court was warranted under the pleadings. (*Livingston* v. *Van Rensselaer*, 6 Wend. 63; *Lightfoot* v. *Davis*, 198 N. Y. 261; *Dammert* v. *Osborn*, 140 N. Y. 30; *Bloomquist* v. *Farson*, 222 N. Y. 375; *Phillips* v. *West Rockaway Land Co.*, 226 N. Y. 507;

*Crounse* v. *McVickar*, 207 N. Y. 213; *Matter of N. Y., L. & W. R. R. Co.*, 98 N. Y. 477.) The Surrogate's Court had jurisdiction to take the accounts of the surviving trustees. (Surr. Ct. Act, § 40, subd. 3; § 261, subd. 3; *Matter of Runk*, 209 N. Y. 447; *Matter of Busche*, 227 N. Y. 85; *Lawrence* v. *Littlefield*, 215 N. Y. 561; *Miller* v. *Peck*, 226 App. Div. 713.) The trustees had power to act, following the death of the life beneficiary and the Supreme Court judgment. (*Matter of Thomas*, 254 N. Y. 292; *Matter of Busche*, 227 N. Y. 85.) The allowance of commissions on income received and paid out after the interlocutory accounting in the Supreme Court was proper, the amount thereof and of other allowances being in the discretion of the Surrogate so long as not in excess of the statutory percentage. (*Matter of Thomas*, 254 N. Y. 292; *Matter of Busche*, 227 N. Y. 85.)

*Charles Grosberg*, as special guardian for Donald O. Baucus. The trustees had power to act following the death of the life beneficiary and the Supreme Court judgment. (*Matter of Thomas*, 254 N. Y. 292.) The conduct of the remaindermen indicates at least acquiescence and consent that the trustees should continue to act in their official capacity. (*Matter of Miller* v. *Peck*, 226 App. Div. 713.)

O'BRIEN, J. By the sixth clause of his will Justus Miller provided that the residue of his estate should be held in trust and that the income therefrom should be paid in equal shares to his widow and to his son during their lives. In the event that the son without issue should predecease the widow, he devised and bequeathed by the seventh clause one-half of the trust estate to the widow and the other half to such named nephews and nieces as might survive the son. Among the four executors and trustees appointed by the will were William P. Hale and the widow, Elizabeth Miller. In 1897 the

will was probated before the Surrogate of Rensselaer county. Shortly after the death of the son without issue in 1919, the three surviving trustees, including the widow and Mr. Hale, instituted an action in the Supreme Court for a judicial settlement of their accounts. The judgment in that action settled and allowed the accounts to July 24, 1919, directed the payment of certain commissions and expenses and also directed the distribution of the estate among the widow and the nephews and nieces. At the date of entry of that judgment the trust estate consisted of mortgages on real estate, several parcels of real estate which had been purchased on foreclosure sales by the trustees, and several parcels of real estate which had been owned by the testator. Reciting the fact that the trust estate included a large number of parcels of real property and that the distributees thereof were willing that such property should remain under the control and management of the trustees for an indefinite time, the judgment decreed that the trustees should retain control and management of the real estate until the further order of the court and that they should account, whenever required, for the principal of the fund remaining in their hands. After the entry of that judgment, the three surviving trustees liquidated the mortgages and made distribution on account to the widow and to the nephews and nieces. The widow died in 1922, and the second trustee in 1924, leaving Mr. Hale the sole survivor. Until the death of Mrs. Miller, the three trustees continued to collect the rents from realty which had belonged to the testator. They performed the same acts in relation to the real estate which had been purchased on foreclosure and which was regarded as personalty. After the widow's death and until the death of the second trustee, the two survivors managed the property. Subsequent to 1924 Mr. Hale alone administered the estate. In 1928 he filed in the Surrogate's Court an account from July 24, 1919, to March 31,

1928, and petitioned for a final judicial settlement and for discharge as executor and trustee. His petition was granted, certain of his accounts were allowed and he was discharged. The Appellate Division has unanimously affirmed the decree on the law and the facts. In all courts, the appellants, residuary legatees under the will of the widow who was owner of one-half of the trust fund, have raised the issue of the Surrogate's jurisdiction.

That the trust erected by the sixth clause in the will terminated with the death of the life tenant in 1919 is certain. (Real Prop. Law; Cons. Laws, ch. 50, § 109; Pers. Prop. Law; Cons. Laws, ch. 41, § 11.) The testator's intent to suspend the power of alienation only during the life of his son is clear. Upon the termination of the trust, the duty remained with the testamentary trustees, as such, to divide the personal property and to distribute it. Included within the fund of personal property was the real estate which had been purchased by the trustees on mortgage foreclosure. Until the act of division and distribution should be fully performed, the administration of the trust would not be complete. Even if the title to this personalty had vested in the beneficiaries under the will and had been wholly severed from the trustees, the duty to divide and distribute continued. (*Matter of Thomas*, 254 N. Y. 292.) This duty cast by the testator upon the trustees was part of a function attaching to them in their capacity as testamentary trustees. It arose from the obligation which they assumed when they accepted the responsibility imposed by the will. The judgment of the Supreme Court in 1919 did not add to it. Irrespective of that judgment, they were bound not only to divide and distribute the personalty but also to account for the income accruing during that process of administration. That the duration was long does not alter the fact that, concerning personal property at least, they retained their posts as trustees under the testament. Since their obligation to account

in some capacity is conceded and since they remained, as we hold, testamentary trustees in respect to personalty, one of the forums where jurisdiction resided was the Surrogate's Court.

In respect to the real estate which had been owned by the testator and which by no process of reasoning can be regarded as personalty, the Surrogate was without jurisdiction concerning expenditure, income, commissions or any other item relating to it. Upon the termination of the trust, title to that realty immediately vested in the widow and the other beneficiaries mentioned in the will. (*Watkins* v. *Reynolds*, 123 N. Y. 211; *Townshend* v. *Frommer*, 125 N. Y. 446, 461.) The trustees no longer possessed a right under that instrument to perform any act of administration in respect to such real property. The trust had ended and no court was warranted in extending the term. That part of the judgment in the Supreme Court action which assumed to bestow upon retiring trustees of a terminated trust a continuing faculty as testamentary trustees to control and manage the real estate for an indefinite duration is unauthorized. There was no answer in that action and the complaint made no demand for the extraordinary relief granted. The result is worse than irregular. It is in contravention of section 479 of the Civil Practice Act. (*Clapp* v. *McCabe*, 155 N. Y. 525, 532, 533.) Neither by acquiescence nor by express consent of all beneficiaries under the will could a court acquire any such arbitrary power of interference with the command of the testator. The result follows that the Surrogate was dealing with the accounts of one who, whatever may have been his functions between 1919 and 1928 in respect to real estate, was no longer a testamentary trustee.

The personal representative of Mr. Hale, who has died since the Surrogate's decision in this proceeding, is bound to account in the Supreme Court for his management subsequent to July 24, 1919, of the real estate which had

been owned by the testator. In such an action the evidence may warrant a finding that during these years Mr. Hale by consent or acquiescence was acting as a trustee of some description other than a testamentary trustee or was an agent for those who were vested with title to the realty. Acquiescence is a question of fact. (*Myers* v. *Bolton*, 157 N. Y. 393, 400.) Appellants could not by acquiescence cause an extention of the trust beyond the term prescribed by the testator. They could, however, by acquiescence authorize or ratify the acts of Mr. Hale in managing their own property for their own benefit. Whether his accounts shall be settled in the same amount as was allowed in the present proceeding depends upon the discretion of the Supreme Court. Neither section 285 of the Surrogate's Court Act nor section 1548 of the Civil Practice Act in respect to the payment of commissions will bind the court. Although the terms of Justus Miller's will do require the trustees to collect rents and manage real estate, those fiduciaries subsequent to 1919 no longer acted under those provisions of that instrument and, therefore, the Surrogate's Court Act has no application. The Civil Practice Act refers only to commissions to trustees of an expressed trust. After the judgment of 1919 Mr. Hale and his associates were at most, as the Supreme Court may perhaps find, nothing more than trustees by acquiescence or agents by consent. In such an event, they would be entitled to reasonable value for their services.

The reversal of this order will result in a new action for an accounting wherein the allowances may be the same as in the present proceeding. Nevertheless, when the jurisdiction of an important court is the main issue, our duty is plain. The public interest and the interest of jurisprudence might be endangered by permitting this decision to go unchallenged. (*Sciolina* v. *Erie Preserving Co.*, 151 N. Y. 50, 53.) The major functions of this court include the duty uniformly to settle the law for the

entire State and finally to determine its principles. (*Reed v. McCord,* 160 N. Y. 330, 335, 336.)

The order appealed from should be modified, without costs to either party, and the case remitted to the Surrogate's Court for further proceedings in accordance with this opinion.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Ordered accordingly.