EDITH M. BRYANT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20667. Promulgated January 31, 1950.

*Joel B. Adams, Esq.,* for the petitioner.
*Sanford M. Stoddard, Esq.,* for the respondent.

OPINION.

LEECH, *Judge*: The respondent has determined deficiencies in income and victory tax for the calendar year 1943 in the total of $2,353.31, and a deficiency in income tax for the calendar year 1944 in the sum of $1,221.05. Deficiencies for both of these years arise from respondent's action in including in petitioner's income for those years certain dividends received by the trustee of a trust of which the petitioner was a secondary income beneficiary and remainderman.

The proceeding was submitted upon a stipulation of facts, which we find as stipulated.

The petitioner resides in North Carolina and filed her tax returns for the taxable years 1943 and 1944 with the collector of internal revenue for the district of North Carolina.

S. E. Moorhead, father of the petitioner, died a resident of the City, County, and State of New York on September 25, 1931, leaving a last will and testament, which was duly admitted to probate by the surrogate's court of said county, and in and by the tenth item of which he made the following bequest:

ITEM TENTH. I give and bequeath unto the GUARANTY TRUST COMPANY OF NEW YORK, and to its sucessors, twenty-five hundred (2500) shares of the Capital Stock B of LIGGETT & MYERS TOBACCO COMPANY, of which I am now the owner, IN TRUST NEVERTHELESS, to hold the same and collect and receive the income and profits thereon, to deduct therefrom the statutory commissions of the "Trustee" and the proper and necessary expenses in connection with the administration of the trust, and from the net income derived therefrom, and any deficiency thereof from the principal, to pay the sum of Ten Thousand ($10,000.00) Dollars each year in quarter annual installments, to my beloved wife, ANNA JOHNSTON MOORHEAD, of the City of New York, for and during her natural life or so long as she remains my widow, and the remainder of the net income, if any therefrom, to my said daughter, EDITH MOORHEAD BRYANT, her executors, administrators and assigns.

Upon the death or remarriage of my said wife, ANNA JOHNSTON MOORHEAD, the trust created hereunder shall terminate, and upon such termination thereof I direct my said "Trustee" to pay, convey, assign, set over and deliver the principal of said "trust fund", or so much thereof as then remains, less statutory commissions, unto my said daughter, EDITH MOORHEAD BRYANT, her executors, administrators and assigns.

The trust created for the benefit of my said wife, ANNA JOHNSTON MOORHEAD, under this item of my will is in lieu of the provisions made for her by antenuptial agreement dated January 14th, 1914.

Item eleventh of the will provided as follows:

ITEM ELEVENTH. My "Trustee" shall not, without the approval and consent in writing of my said daughter, EDITH MOORHEAD BRYANT, dispose of the stock left to it in trust, and in the event of the disposal of the same with the consent of my said daughter shall invest the proceeds thereof in securities of the character authorized by the laws of the State of New York for trust investments unless the written consent and approval of my said daughter to otherwise invest shall be given, it being understood, however, that in the event of a reorganization or the change of the said securities by the Liggett & Myers Tobacco Company my "Trustee" shall be empowered to receive such stocks or securities as may be given in exchange therefor.

The Guaranty Trust Co. of New York duly qualified as trustee of the trust, and, as such trustee, received on May 12, 1932, the 2,500 shares of the common B stock of Liggett & Myers Tobacco Co. to be held and administered by it in accordance with the terms and provisions of items tenth and eleventh of the will.

In the year 1932 the trustee received from the executors of the last will and testament of S. E. Moorhead, deceased, for distribution in accordance with the terms and provisions of the aforesaid trust, the sum of $7,500 and interest in the sum of $19.80. Thereafter, for the years 1933 to 1942, inclusive, the trustee received as gross income from the trust estate in its possession the following amounts:

| 1933 | $12,267.67 | 1938 | $12,513.41 |
|---|---|---|---|
| 1934 | 12,500.00 | 1939 | 12,504.05 |
| 1935 | 12,500.58 | 1940 | 12,504.20 |
| 1936 | 17,502.69 | 1941 | 12,504.00 |
| 1937 | 15,015.20 | 1942 | 8,739.15 |

All this income was disbursed by the trustee prior to December 31, 1942, by distribution to Anna J. Moorhead and Edith M. Bryant, and the payment of commissions and other expenses of the trust.

Anna Johnston Moorhead, stepmother of the petitioner and primary life beneficiary of the trust, survived the testator and died a resident of the City, County and State of New York on October 17, 1943, without having remarried.

Except as set forth above, the trustee did not actually distribute any part of the principal or any part of the income of the trust to the petitioner as remainderman or otherwise until on or about April 3, 1944, when the remainder of the trust corpus, together with income in the hands of the trustee amounting to $186.71, was transferred, assigned, paid over and delivered to the petitioner as her absolute property.

In the year 1943 the trustee received gross income amounting to $8,857.30, $5,801.05 of which was received by the trustee prior to October 17, 1943, the date of death of the life beneficiary, and $3,056.25 of which was received thereafter on December 1, 1943. Between January 1, 1944, and the date of actual distribution of the assets of the trust to the petitioner, the trustee received gross income in the amount of $1,837.58, and during that period from the funds received by it as income subsequent to October 17, 1943, it made the following disbursements, other than the cash disbursements made to this petitioner at the time she received the assets representing the principal of the trust:

1944

Mar. 1 Collector of internal revenue representing payment of 1943 Federal income tax on capital gains_____ $8.30

10 Federal and state stamp taxes for transfer of 2,445 shares of Liggett & Myers Tobacco Co. stock_____ 105.90

31 Guaranty Trust Co. of New York principal commissions on termination of trust_____ 3,364.43

Apr. 3 Cost of postage and insurance incurred in connection with the shipment of Liggett & Myers Tobacco Co. stock to Edith M. Bryant_____ 7.17

4 Gwinn & Pell payment of bill dated February 5, 1944 for legal services in preparing termination papers for the trust_____ 300.00

5 Estate of Anna J. Moorhead representing income accrued through October 17, 1943_____ 602.74

12 New York State Tax Commission representing payment of 1943 New York State income tax_____ 93.56

Apr. 12 New York State Tax Commission representing payment of 1943
New York,State income tax on capital gains_____ $3. 09
   12 Guaranty Trust Co. of New York income commissions_____ 221. 93

Total_____ 4, 707. 12

None of the income received by the trust after the death of the life beneficiary, as described in the preceding paragraph, was included in the petitioner's income tax return for either the taxable year 1943 or the taxable year 1944.

The Guaranty Trust Co., as trustee of the aforesaid trust, duly filed fiduciary income and victory tax returns for the calendar year 1943 and for the period January 1 to April 19, 1944. On the 1943 return the trust estate claimed as a deduction the amount of $3,056.25, as income distributable to petitioner, and the amount of $5,118.83 as distributable to the life beneficiary, in that year. On the 1944 return the trust estate claimed as a deduction the amount of $1,522.09 as income distributable to petitioner.

The account of the acts and transactions of the trustee from the inception of the trust to and including November 15, 1943, was settled by a nonjudicial accounting in the form of an instrument of receipt, release, and indemnification executed as of February 21, 1944, by and between the Guaranty Trust Co., as trustee, Edith M. Bryant, and Carolyn J. Franklin and the Guaranty Trust Co. as executors of the last will and testament of Anna J. Moorhead, deceased, in manner and form to be recorded pursuant to law. That account showed the following cash and securities remaining in the hands of the trustee on November 15, 1943:

2,445 shs. of Liggett & Myers Tobacco Co. common "B" stock, having
value as of Nov. 15, 1943, of $159,536.25 and having an inventory
value as set forth in column VII of schedule A of said trustee's
account, of_____ $119, 499. 37
Cash remaining in said trustee's hands, as shown by column VII of
schedule A of said trustee's account in the sum of_____ 42. 16

Total_____ 119, 541. 53

Paragraph 4 of the instrument of receipt, release, and indemnification provided as follows:

That simultaneously with the execution by the said parties of the said instrument of release and discharge and in consideration of the payment and delivery to her of said cash and securities hereinabove described, (i. e., those set forth above), the undersigned, Edith Moorhead Bryant, has paid to said trustee the sum of $4,461.81 to enable said trustee to avoid the necessity of liquidating any of the foregoing securities for the purpose of paying the amounts enumerated below; and said Edith Moorhead Bryant hereby authorizes said trustee to distribute such sum so advanced by her to the following named parties in the following respective amounts, in payment and satisfaction of their respective interests in said trust, to wit:

(a) To Guaranty Trust Company of New York in full payment and satisfaction of the balance of commissions to which it is entitled, as shown by Schedule "F" of said trustee's account, on principal the sum of $3,364.43 and on income in the sum of $84.86, amounting in all to the sum of_____ $3,449.29

(b) To Carolyn J. Franklin and Guaranty Trust Company of New York, as executors of the Last Will and Testament of Anna J. Moorhead, deceased, in full payment and satisfaction of the income accrued and unpaid to Anna J. Moorhead up to the date of her death, the sum of_____ 602.74

(c) To Gwinn & Pell, attorneys for said trustee, in full payment and satisfaction of their fees for legal services rendered to the trustee in examining said trustee's account and for their services in preparation of this agreement of release and discharge, and all other services incidental to the termination of this trust, the sum of_____ 300.00

(d) To Guaranty Trust Company of New York in reimbursement of the necessary expenses to be incurred in connection with the transfer and delivery to the remainderman of the shares of stock delivered to her hereunder, the sum of_____ 109.79

Each of the foregoing parties named in this paragraph does hereby acknowledge the receipt from said trustee of the respective payments as above provided.

Notwithstanding the recitals contained in paragraph 4 of the instrument of receipt, release, and indemnification concerning the payment by the petitioner to the trustee of a certain sum of money and the delivery by the trustee to the petitioner of the then remaining assets of the trust, simultaneously with the execution of that instrument, no payment was in fact made by petitioner to the trustee at such time, but the items of expense enumerated in paragraph 4 were satisfied solely out of income received by the trustee after October 17, 1943, the date of death of the life beneficiary, and said items of expense are covered by the disbursements hereinabove described. Similarly, the remaining assets of the trust were not in fact delivered to the petitioner until on or about April 3, 1944.

The instrument of receipt, release, and indemnification was transmitted to the petitioner by a letter of transmittal dated February 16, 1944, from the Guaranty Trust Co.

The books of account and income tax returns of the petitioner, the Guaranty Trust Co., as trustee, and the Guaranty Trust Co., individually, were kept and filed on the cash receipts and disbursements basis for the years 1943 and 1944.

It is respondent's position that the time occupied in settlement and making final distribution to the petitioner under the terms of the testamentary trust was excessive; that the trust could have been settled by November 15, 1943; and that, under the facts here stipulated, the trustee relationship of the Guaranty Trust Co. must be considered as terminated on that date and the trust corpus treated as corpus in ownership and under control of petitioner thereafter, with that company merely acting as her agent in collecting her income and making her disbursements.

Upon this basis it is argued that all of the income received by the trustee in 1943 subsequent to November 15 of that year, less certain expenses, is taxable to petitioner, and none of it was distributable to the estate of the primary beneficiary in payment of the amount accrued to it for 1943 to the date of her death. The income received in 1944 prior to the actual distribution of the corpus to the petitioner, respondent holds to be taxable to petitioner without the deduction of expenses by the trustee, upon the theory that these expenses were for services rendered by the trustee *qua* trustee during the time the trust was in existence and consequently deductible only by the trustee.

It is difficult to follow the reasoning supporting the respondent's theory, but in general it seems to be predicated upon the assumption that the trust ended on November 15, 1943, and that as of that date the petitioner came into possession of the trust estate, burdened with encumbrances representing trustee commissions and other expenses due or to become due, and that the payment of these represented not payments incident to the management and conservation of property or the production of income therefrom, but merely effected a diminution of the trust estate.

We do not agree with this conclusion. Respondent does not dispute the well established rule that the trust did not terminate upon the death of the primary beneficiary, but continued for a period thereafter reasonably necessary to a proper winding up of the affairs of the trust and distribution of the corpus to petitioner. *Deering* v. *Pierce*, 133 N. Y. S. 582; *In re Miller's Will*, 257 N. Y. 349; 178 N. E. 555; *In re Thomas' Will*, 254 N. Y. 292; 172 N. E. 513; *Willard C. Lipe, Jr.*, 41 B. T. A. 107; affirmed as *Commissioner* v. *First Deposit & Trust Co.*, 118 Fed. (2d) 449. We do not think, under the facts stipulated, that the period from October 17, 1943, the date of the death of the primary beneficiary, until April 3, 1944, when the corpus of the trust was finally distributed to petitioner, was an unreasonable time. In fact, it could not be determined until the close of the year 1943 whether the income of that year would be sufficient to pay the amount of the annual income which had accrued to the primary beneficiary to the date of her death. Under the specific terms of the trust the sum of $10,000 was a charge for the primary beneficiary against the yearly income. The parties do not dispute the fact that the right to receive income for the year 1943 at the rate of $10,000 accrued ratably to that beneficiary until her death on October 17, 1943, or in the sum of $7,945.20. As of that date only $5,801.05 had been received as income by the trustee, but following her death and before the close of the year 1943 additional income in the sum of $3,056.25 was received by the trustee, making a total income of $8,857.30 received in that year, and subsequently no deficiency in income for 1943 existed to empower the trustee

to invade corpus. It necessarily follows that $7,945.20 of the gross income of the trust for 1943 was distributable to the primary beneficiary or her estate.

Respondent's position seems to be predicated largely upon the fact that the petitioner and the trustee, after the close of the year 1943, on February 21, 1944, six weeks before the actual distribution of the corpus of the trust to petitioner, executed an instrument of receipt, release, and indemnification, which recited as a fact that the trustee's account as of November 15, 1943, was accepted and that petitioner was advancing the trustee the funds necessary to pay expenses of the trust, including its final fees and a deficiency in income due the estate of the primary beneficiary.

It is stipulated that the petitioner made no actual advances to the trustee. The indication is that no such advances were ever contemplated. The trust did not in fact terminate on November 15, 1943, and the trustee made its returns as such for both that year and the following year 1944. The expenditures recited in the instrument as made or to be made from funds advanced by petitioner were actually made by the trustee from funds in its hands representing income received in 1943 and 1944 and the proceeds from the sale of 55 shares of the Liggett & Myers Tobacco Co. stock constituting the corpus of the trust. It is quite evident that the instrument in question was executed merely as a protection to the trustee in making delivery of the trust corpus and closing its accounts without the additional delay and cost of securing a final settlement under court decree. We do not think that the recitals as fact of matters stipulated to be fiction may be used to determine petitioner's tax liability with respect to income received by the trustee as such subsequent to November 15, 1943. We conclude that the trust was terminated for present purposes on the date of final distribution, April 3, 1944, and that its provisions were effective until that time.

The issue here is the taxable income of petitioner, secondary income beneficiary and remainderman, for each of the years 1943 and 1944.

The test of whether the income in controversy is taxable to petitioner depends upon its then deductibility by the trust. Sec. 162 (b), I. R. C.[1]

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*          \*          \*          \*          \*          \*          \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, *but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not.* As used in this subsection, *"income which is to be distributed currently"* includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable years. [Emphasis supplied.]

That deductibility rests, in turn, upon the right of the trust, under the trust deed, to pay and the right of the petitioner to receive—not upon what, in fact, was done. *Freuler* v. *Helvering*, 291 U. S. 35.

The trust corpus consisted of personalty, title to which was bequeathed to the testamentary trustees to be administered pursuant to the provisions of the trust. The decedent, under whose will the trust was created, died a resident of the State of New York. The trust, therefore, is to be construed under the laws of that state.

The rule in New York is that title to personalty in a trust estate remains with the trustees until paid out or distributed under the trust agreement. *In re Lathers' Will*, 137 Misc. Rep. 226; 243 N. Y. S. 366. See also Perry on Trusts, § 311. The trust instrument here makes it clear that the wife of the decedent was to receive an annuity of $10,000 annually, to be paid from income, but if the income was insufficient, then out of corpus. The balance of the income was directed to be paid currently to the decedent's daughter, petitioner herein. And, even if the trust instrument had not so provided, the trustee would be required to distribute currently the remaining income to petitioner as the person entitled to the next eventual estate, since the petitioner was an adult, and the controlling law of New York forbids the accumulation of income for her benefit. N. Y. Personal Property Law, § 16.

Pursuant to section 162 (b) of the Internal Revenue Code, *supra*, the trust estate is entitled to a deduction for income currently distributable by the fiduciary. By an amendment to that section by section 111 (b) of the Revenue Act of 1942, income of the taxable year of the estate or trust, which within the taxable year was payable to the legatee, heir, or beneficiary, is "income which is to be distributed currently." Therefore, under the terms of the trust instrument in question, the net income as and when received by the trustee which was not distributable to the life beneficiary or her estate was taxable income of petitioner.

It is petitioner's contention that, in determining the amount of income taxable to her, she is to be allowed the same deductions to which the trust estate would be entitled in determining its liability as a separate taxable entity under the rationale of *Bingham's Trust* v. *Commissioner*, 325 U. S. 365; and *James H. Knox Trust*, 4 T. C. 258. We do not agree. We are here concerned only with the tax liability of petitioner. The trust estate is not before us.

Under the established rule in New York, only those expenses properly chargeable against income are deductible from income, and those expenses charged against corpus are deductible from corpus. *In re Petremont's Will*, 213 App. Div. 318; 210 N. Y. S. 379; affd., 241 N. Y. 586; 150 N. E. 566; *Matter of Eddy's Will*, 207 App. Div. 162; 201 N. Y. S. 760, 761; *In re Marvin's Estate*, 135 Misc. Rep. 899; 241 N. Y. S. 500; *In re Chave's Estate*, 227 App. Div. 554; 238 N. Y. S. 678.

We think it was the testator's intention that expenses properly chargeable against income were to be paid first from income and, if insufficient, then from corpus, and that expenses properly chargeable against corpus were to be paid from corpus. Therefore, in determining petitioner's taxable income, only those expenses properly chargeable against income may be deducted in the respective taxable years.

. The record establishes that the gross income of the trustee in the year 1943 was $8,857.30. Of that amount the life beneficiary, or her estate, was entitled to receive 290/365 of $10,000, or the sum of $7,945.20, undiminished by expenses. The remaining income distributable to petitioner is chargeable with the expenses properly payable out of income. The remaining income of $912.10, less the expenses properly chargeable against income, was currently distributable under the terms of the testamentary trust to this petitioner. The expenses properly chargeable against income in 1943 aggregate $315.49, and consist of the following disbursements, to wit, the sum of $93.56 representing income tax paid to the State of New York for 1943, and the trustee's commissions on the 1943 income in the amount of $221.93. Subtracting the deductible expenses chargeable to income in the amount of $315.49 from the remaining income in the amount of $912.10 leaves a balance of $596.61. We, therefore, hold that the sum of $596.61 was currently distributable and taxable to petitioner in the taxable year 1943.

The record also establishes that between January 1, 1944, and the date of final distribution, the trustee received gross income from the trust in the amount of $1,837.58. The only expense which we think is shown by this record to be properly chargeable against such income is the amount of $84.86 representing commissions of the trustee on income received and paid out in that year. The other items disclosed by this record as having been paid under the agreement of settlement, except the sum of $602.74, accrued income paid to the estate of the life beneficiary, are held to be properly chargeable against corpus and merely reduce the amount distributable to petitioner as remainderman. They do not affect the amount of income currently distributable and taxable to petitioner as income in 1944.

We, therefore, hold that the amount of income currently distributable to petitioner in the year 1944 was the sum of $1,752.72, being the amount of gross income of $1,837.58 less the deductible expense of $84.86 representing the trustee's commissions chargeable against income. The respondent, however, has included in petitioner's gross income for 1944 only the sum of $1,522.09, which is less than the amount we find to be actually distributable. As no increased deficiency is requested, we hold and conclude that the amount includible as taxable income to petitioner from the trust in the year 1944 is the sum of $1,522.09.

It appears that the amount we have held to be currently distributable and taxable to petitioner in 1943 is less than the amount shown to be distributable on the fiduciary return filed by the trust estate for that year. We think the fiduciary returns are not controlling in determining the income tax liability of petitioner. Her liability is to be determined by us under the applicable taxing statutes and the pertinent provisions of the testamentary trust. *Freuler* v. *Helvering, supra; Charles S. McVeigh*, 3 T. C. 1246, 1257.

*Decision will be entered under Rule 50.*